583 P.2d 239

The STATE of Arizona, Appellee,

v.

Paul Montez SUSTAITA and Paul R. Gonzales, Appellants.

No. 4092–PR.

Supreme Court of Arizona,
In Banc.

June 23, 1978.

Rehearing Denied Sept. 7, 1978.

Bruce E. Babbitt, Atty. Gen., John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, Cleon M. Duke, Asst. Attys. Gen., Phoenix, and Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Harley Kurlander, Tucson, for appellant Sustaita.

Frederick S. Klein, Tucson, for appellant Gonzales.

CAMERON, Chief Justice.

We granted petitions for review (Rule 31.19, Rules of Criminal Procedure, 17 A.R.S.) of the decisions and opinion of the Court of Appeals in two consolidated cases which affirmed as to the defendant Paul Montez Sustaita and reversed as to the defendant Paul Rodriguez Gonzales.

Defendant Sustaita appealed from a verdict and judgment of guilt to the crime of assault with intent to commit sodomy, A.R.S. § 13–252, and sodomy, A.R.S. § 13–651. Defendant Gonzales appealed from a verdict and judgment of guilt to the crime of assault with intent ·to commit sodomy, A.R.S. § 13–252. Sustaita received concurrent prison sentences of 8 to 10 years for assault with intent to commit sodomy and 12 to 15 years for sodomy. Gonzales was sentenced to a prison term of 4 to 6 years.

We must decide the following issues:

1. Did the trial court err in allowing the prosecutor to cross-examine and subsequently impeach his own witness by introduction of a prior inconsistent statement?

2. Did the trial court err in refusing to grant defendant Gonzales' motion to sever?

3. Did the trial court err in permitting a statement made by defendant Sustaita to be used against defendant Gonzales?

4. Did the trial court commit reversible error in refusing to strike incompetent testimony offered to impeach witness Marvin Zufelt?

5. Should the in-court identification of the defendants have been suppressed or the case dismissed because certain photographs used in a prior out-of-court identification were not available at the trial thereby precluding a determination of prejudicial impact, if any, of the prior out-of-court identification on the in-court identification?

6. Were counts in the indictment against the defendants alleging assault with intent to commit sodomy fatally defective and thus subject to dismissal because the statute alleged to have been violated was stated as A.R.S. § 13–253 when the correct statute for the crime is A.R.S. § 13–252?

7. Is assault with intent to commit sodomy a lesser included offense of sodomy, making Sustaita's conviction for both improper?

8. Were arguments and insinuations made by the prosecutor so improper or prejudicial as to deny the defendants a fair trial?

The facts necessary for a determination of this matter are as follows. In July of 1976, a twenty-year old male was sentenced to serve a 6 month jail sentence in the Pima County Jail following his guilty plea on a misdemeanor charge. On or before 27 July 1976, the victim was assigned to a trusty tank where several trusty inmates were billeted. On the evening of 27 July, the victim was lying on his bunk when he was approached by defendant Paul Sustaita who offered to give him a massage. Defendant Paul Gonzales was in the immediate area when this offer was made. The victim declined the invitation. Later in the evening, Sustaita again approached the victim's bunk, uttered a few expressions concerning his desires and then assaulted the victim. After some struggle, Sustaita subdued the victim and sodomized him by inserting his penis into the victim's anus. Within one minute after the incident occurred, Paul Gonzales jumped into the victim's bunk and attempted to sodomize him. During his struggle to subdue the victim, Gonzales lost his erection and was unable to complete his design. He fled from the victim's bunk when a guard was heard coming down the hallway. The next day, the victim sought and received medical attention, reported the incident to the jail authorities, and identified his assailants from mugshot photographs of inmates in the trusty tank. Charges were thereafter filed against Sustaita and Gonzales.

The matters were joined for trial before a jury and from the verdicts, judgments, and sentences, defendants appealed. The Court of Appeals affirmed as to defendant Sustaita and reversed and remanded for new trial as to defendant Gonzales because of impeachment by the State of its own witness. Ariz.App., 583 P.2d 256 (1977). Both defendants and the State petitioned this court for review which petitions were granted.

## CROSS–EXAMINATION AND IMPEACHMENT OF THE STATE'S OWN WITNESS

On 28 July 1976, the day following the incidents, Detective Ron Hyatt of the Pima County Sheriff's Department interviewed each of the inmates who had spent the night in the trusty tank. Inmate Bobby Dean Warren, who occupied a bunk above the victim's bunk, told the detective that he had been awakened during the night by the victim's shouting and had seen Gonzales squatting or standing beside the victim's bunk. He also told Detective Hyatt that he had seen both Gonzales and Sustaita near the victim's bed earlier that evening. Warren's statements to Hyatt were included in a report Hyatt wrote the day after the interview (on 29 July).

In an interview with an investigator from the County Attorney's Office approximately one week before the trial, Warren denied his earlier statement. The prosecutor was aware of this second statement and includ-

ed it in his required pretrial disclosure to the defendants' attorneys.

Mr. Warren was called by the prosecutor to testify at trial. Contrary to his first statement, Warren denied having seen either Sustaita or Gonzales near the victim's bunk on the evening in question. He also testified that he was awakened during the night not by the victim's yelling, but by Gonzales and another inmate "chest boxing" in another area of the tank. As the witness's position developed, the prosecutor resorted increasingly to the use of leading questions. At no point, however, did he request permission to cross-examine his own witness, nor was there any objection by defendants to this questioning on the ground that it constituted cross-examination. When the prosecutor asked the witness whether he had told Detective Hyatt that he had seen Gonzales by the victim's bunk on the evening of 27 July, an objection was made on the ground that the prosecutor was trying to impeach his own witness. The court overruled the objection on the basis of *State v. Skinner,* 110 Ariz. 135, 515 P.2d 880 (1973), but suggested that the prosecutor proceed by first attempting to refresh the witness's recollection by showing him Detective Hyatt's report containing his original statement. This the prosecution did, but the witness denied having made the statements attributed to him in Detective Hyatt's report. Later, the prosecutor called Detective Hyatt who testified as to Warren's original statement to him on 28 July. On appeal, it is contended that the trial court erred in allowing the prosecutor to cross-examine and impeach his own witness.

■ It was a rule of both the civil and common law that a witness could not be cross-examined or impeached by the party calling him. Over the years, various exceptions and conditions to exceptions have been engrafted onto this rule by courts of various jurisdictions in an effort to correct injustices arising from perjured testimony. Recently, the traditional rule was completely abrogated in this jurisdiction by our adoption of rules of evidence which permit

any party to attack a witness's credibility, including the party calling him. Rule 607, Rules of Evidence, 17A A.R.S. The instant case, however, was tried before the new rules of evidence became effective. We must determine whether the trial court's permitting the prosecutor to cross-examine and impeach Bobby Warren violated the rule in Arizona as it existed prior to the enactment of the new rules of evidence.

In determining whether error was committed, a distinction must be made between cross-examination of a witness and impeachment of a witness. We have stated:

"[W]hile surprise is a condition precedent to cross-examining one's own witness, adversity or prejudice is a condition precedent to impeachment of one's own witness. We clearly distinguished between the right to cross-examine and the right to impeach. . Before a party's witness may be impeached he must have testified to some fact that was prejudicial or damaging to the party calling him." *State v. Skinner, supra,* 110 Ariz. at 143, 515 P.2d at 888.

In other words, the rule was that before you could cross-examine your own witness, you had to show surprise. Before you could go further and impeach your own witness, you had to show adverseness and prejudice:

"In assignments 4 and 5 defendant has failed therein to make a distinction between the right to impeach the witness and the right to cross-examine him. The right to cross-examine a witness when he testifies to something which takes the party calling him by surprise may exist when the right to impeach such witness clearly would be denied. Where a witness testifies to something different from what he was expected to testify but whose testimony is not necessarily prejudicial or damaging to the cause of the party calling him he may be cross-examined by such party for the purpose of refreshing his memory and reference may be made to former statements made or testimony given by such witness for the purpose of refreshing his memory and in

aiding him to testify to the truth. (citations omitted)

"However, before such witness can be impeached he must have testified to some fact that was prejudicial, damaging to the party calling him. (citation omitted) * * * " *State v. Lane,* 69 Ariz. 236, 242, 211 P.2d 821, 824–25 (1949).

In the instant case, the defendant Gonzales did not object to the State cross-examining its own witness, and we do not believe that objection to the State's impeaching its own witness was sufficient to preserve the question of whether the State's cross-examination of its own witness was permissible under the circumstances. Having failed to raise the question of cross-examination at trial, it cannot be raised on appeal. *State v. Wilson,* 113 Ariz. 308, 553 P.2d 235 (1976). As to the impeachment of Warren, there is no question that his statements were adverse and prejudicial. It was therefore proper for the State to try to impeach the witness. *Skinner,* supra. See also *State v. Soto,* 117 Ariz. 345, 572 P.2d 1183 (1977).

We therefore hold that the trial court did not err in permitting the State to impeach its witness by introducing evidence of a prior inconsistent statement.

## THE MOTION TO SEVER

On 28 October 1976, defendant Gonzales filed a motion to sever his case from defendant Sustaita's case. The motion was heard and denied on 15 November 1976. Gonzales now contends that the trial court committed reversible error in denying his motion to sever.

Rule 13.4, Rules of Criminal Procedure, 17 A.R.S. provides in part:

"Rule 13.4 *Severance*

"a. In General. Whenever 2 or more offenses or 2 or more defendants have been joined for trial, and severance of any or all offenses, or of any or all defendants, or both, is necessary to promote a fair determination of the guilt or innocence of any defendant of any offense, the court may on its own initiative, and shall on motion of a party, order such severance.

"b. As of Right. The defendant shall be entitled as of right to sever offenses joined only by virtue of Rule 13.3(a)(1)."

Rule 13.3(a)(1) provides:

"Rule 13.3 *Joinder*

"a. Offenses. Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:

(1) are of the same or similar character; * * *."

Severance as of right, Rule 13.4(b), applies only to the joinder of offenses under Rule 13.3(a)(1). That is, a defendant has the right to sever multiple offenses against him when the only basis for their joinder is that they are of the same or similar character. Here defendant Gonzales was charged with only one offense; hence as to him, there was no joinder of offenses pursuant to Rule 13.3(a)(1), and Rule 13.4(b) does not apply. See ABA Standards Relating to Joinder and Severance, §§ 2.1 and 2.2 (Approved Draft, 1968).

Neither do we find that a severance is necessary to promote a fair determination of the guilt or innocence of the defendant. The participation by Sustaita was part of the complete story of the events that occurred on the evening of 27 July. Thus, Sustaita's participation would have been known even if Gonzales had been tried separately. Rule 13.3(b) provides:

"Two or more defendants may be joined when each defendant is charged with each offense included, or when the several offenses are part of a common conspiracy, scheme or plan or are otherwise so closely connected that it would be difficult to separate proof of one from proof of the others."

We find no abuse of discretion in the trial court's denial of the motion to sever:

"The Appellant must demonstrate a clear abuse of discretion with respect to the trial court's decision to join the offenses, 'based on the showing at the time the motion is made and not what ultimately

transpires at the trial. *State v. Good-year,* 100 Ariz. 244, 413 P.2d 566 (1966).' *State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973)." *State v. Dale,* 113 Ariz. 212, 215, 550 P.2d 83, 86 (1976).

In addition, we have carefully read the entire record of the trial and we are unable to find any indication that Gonzales was prejudiced by virtue of the joinder of his case with Sustaita's.

We believe that this was a proper case for joinder and hold that the trial court did not abuse its discretion in denying the motion to sever.

## ADMISSION OF SUSTAITA'S STATEMENT CONCERNING GONZALES' SWOLLEN KNUCKLES

■ Arthur Gorsave, a paramedic employed at the Pima County Jail, was called as a witness by the State. He testified that on the same day he examined the victim, Paul Gonzales came to him complaining of a hurt hand. He testified that he observed swelling around the knuckles of Gonzales' hand at the time. Gorsave further testified that about a month later he was called to the trusty tank by Paul Sustaita who, within hearing distance of Gonzales and other inmates, asked Gorsave if he had said something to the investigating officers about Gonzales' hand. After he replied in the affirmative, Gonzales asked him if he did not remember Gonzales' complaining about the hand prior to the time he (Gorsave) had examined the victim.

Counsel for Gonzales claimed the introduction of Sustaita's statement to Gorsave was so prejudicial as to require a mistrial. His motion for mistrial was denied. On appeal, Gonzales claims the introduction of Sustaita's statement violated his constitutional rights to confrontation and due process citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* held that, in a joint trial where the first defendant does not take the stand, the introduction of his extra-judicial confession which incriminates the second defendant violates the second defendant's right to confrontation because the second defendant is unable to cross-examine the first defendant about the statement. The *Bruton* holding is inapplicable in the instant case because, unlike the facts there, defendant Sustaita did, in fact, testify at trial subsequent to Gorsave's testimony. Since Sustaita took the stand and was subject to cross-examination by counsel for Gonzales, there was no infringement of any Sixth or Fourteenth Amendment rights. *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971).

## FAILURE TO STRIKE IMPROPER IMPEACHMENT

■ It is contended that the trial court committed reversible error in refusing to strike testimony of Detective Hyatt offered to impeach Marvin Zufelt, a defense witness. Zufelt testified on direct examination that he was present in the trusty tank the night the offenses allegedly occurred, that he was watching television in a bunk near the victim's bunk and was in the vicinity the entire evening, that he saw no assault on the victim by either of the defendants and that had an assault occurred he would have been aware of it. Later, the prosecutor called Detective Hyatt to the stand and questioned him regarding Zufelt's statements to him during the investigation of the incident:

"Q All right. Now, sir, I'd like to pose a question to you, and I would ask you—if you would assume, please, that Marvin Zufelt testified before this jury yesterday that he was sitting watching television in a bunk nearby the bunk of [the victim] and that he was in the vicinity the entire evening, and at no time did he see any struggle take place, or any type of assault take place upon [the victim] and that he told you that same evening whenever you spoke to him individually; is that what he told you?

"A No, sir.

    *    *    *    *    *    *

"Q *  *  *

Did he—did he decline to go into any details of what had occurred on July 27th in the Pima County Jail?

"A No, sir.

"Q Okay. Did he relate any details of an incident occurring on July 27th, 1976? Now I'm just talking about an incident that evening, as far as what actually happened in the Pima County Jail on July 27th. Did he tell you Yes, or, No, as to whether or not the incident had occurred?

"A Yes."

Later, on voir dire of the detective outside the presence of the jury, it was disclosed that Zufelt had never claimed personal knowledge of the assaults when he spoke to Detective Hyatt, but only that he had heard from other inmates that the incidents had occurred. On the basis of this disclosure, defense counsel sought to have Detective Hyatt's earlier testimony regarding Zufelt's statements to him stricken as improper impeachment. This request was denied and the defendant claims error.

It is clear that the prosecutor's examination of Detective Hyatt created the impression that Zufelt had made prior inconsistent statements concerning his personal observations on the night in question. However, the fact that Zufelt had not made any representations of personal knowledge at variance with his trial testimony but had merely reported what others had told him regarding the evening's events was clearly brought to the attention of the jury. The record indicates that defense counsel brought out the fact that Zufelt had never claimed any personal knowledge of the facts of the crime in a most effective manner. Any error the trial court may have committed in refusing to strike the testimony was cured by the exposure to the jury of the crucial facts on cross-examination. We find no error.

## UNAVAILABILITY OF PHOTOGRAPHS USED IN PRETRIAL IDENTIFICATION

██ The day following the assaults, the victim reported his experience to Officer Del Prete, telling him that both of his assailants were Mexican-Americans. He described one as being tall and the other as bearing a jail nickname of the "Bear." Officer Del Prete at this point obtained the intake mugshot photographs of all the inmates then residing in the trusty tank, approximately 25 to 30 in number. Approximately one-fourth of these inmates were Mexican-Americans. Testimony is conflicting as to whether the victim was shown all of the photographs or merely five of them which were of Mexican-Americans. Whichever the case, the victim selected the photographs of Sustaita and Gonzales. Thereafter, all of the pictures were returned to the inmate files. Between the time of the photographic lineup and the *Dessureault* hearing, the photographs of the inmates who had been released from jail were disposed of in accordance with standard jail practice. The defendants contend that the destruction of these photographs precluded a determination of whether the photographic lineup was unduly suggestive and, if so, whether such suggestiveness tainted the victim's subsequent in-court identification. They argue that because of this, the case should have been dismissed or the in-court identification suppressed. We do not agree.

The victim testified that prior to the assaults he had spent a half hour folding clothes with one of the defendants and approximately three to four hours working with the other defendant in the kitchen. He also testified that at the time of the assault, the lighting was good enough to enable him to distinguish faces and that he got a good look at both of his assailants. Before the victim entered the courtroom to testify at the *Dessureault* hearing, defense counsel obtained the court's permission to have the defendants seated next to two other men of Mexican-American descent. The victim had no difficulty selecting the two defendants from the four men. Furthermore, he testified as follows:

"Q Mr. * * *, if you had never seen any of the photographs after the assault had taken place, of either of the two individuals that you—that

you've just identified here in court—would you still be able to identify them, and recognize them, based solely upon having seen them at the time of the assault?

"A Yes."

Even if we assume for the sake of argument that the pretrial identification procedure was unduly suggestive, there would still be no cause for reversal because an independent basis for the in-court identification was clearly established. *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969); *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973). There is no question that the victim knew who his assailants were and had no difficulty in identifying them. The trial court quite properly found the in-court identification to be free from taint and therefore admissible. We find no error.

## MOTION TO DISMISS BECAUSE OF DEFECT IN INDICTMENT

█ The defendants contend that the trial court erred in refusing to dismiss the two counts in the joint indictment respectively charging them with committing assault with intent to commit sodomy. They claim these counts were fatally defective in that they incorrectly refer to A.R.S. § 13–253, rather than A.R.S. § 13–252.

Count One of the indictment read as follows:

"COUNT ONE (ASSAULT WITH INTENT TO COMMIT SODOMY)

"On or about the 27th of July 1976, Paul Montez Sustaita assaulted [the victim] with intent to commit the infamous crime against nature all in violation of A.R.S. § 13–253."

Count Three is identical except that the named accused is Gonzales, rather than Sustaita. (A.R.S. § 13–253 prescribes the penalty for assault with intent to commit a felony, the punishment for which is not otherwise prescribed.)

This defect was first called to the court's attention on the first day of trial, after the jury had been impaneled. Rather than dismissing these two counts on the defendants' motion at trial, the trial court allowed the State to amend the indictment to correct this one-digit error. Rule 13.5(c) of the Rules of Criminal Procedure, 17 A.R.S., provides that

"No issue concerning a defect in the charging document shall be raised other than by a motion filed in accordance with Rule 16."

Rule 16 requires such motions to be made no later than 20 days prior to trial. See Rule 16.1(b). In arguing his motion, defense counsel conceded that the defect was subtle and that he had discovered it only the night before. No contention was made at trial that the defendants lacked notice of the nature of the charge or that they were harmed in preparing a defense thereto. The one-digit, one-number error in the statute citation was a technical or formal defect which was clearly amendable upon the State's motion under Rule 13.5(b), Rules of Criminal Procedure, 17 A.R.S. Also, our Constitution reads:

" * * * No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Art. 6, § 27, Arizona Constitution.

The defendants had ample notice of the charge. The motion was untimely and no prejudice was shown. We find no error.

## WHETHER ASSAULT WITH INTENT TO COMMIT SODOMY IS A LESSER INCLUDED OFFENSE OF SODOMY

█ Defendant Sustaita contends that assault with intent to commit sodomy is a lesser included offense of sodomy and therefore his conviction for both offenses cannot stand. A.R.S. § 13–145. We do not agree. We have stated that:

" * * * [a]n offense which requires different evidence or elements than the principal charge is a separate offense and not a lesser included offense." *State v. Woody,* 108 Ariz. 284, 287, 496 P.2d 584, 587 (1972).

"The test for determining whether one offense is included in another offense was

set out by this Court in *State v. Westbrook,* 79 Ariz. 116, 285 P.2d 161, 53 A.L. R.2d 619 (1954): 'The test to be applied is simple: Is the first offense one that cannot be committed without necessarily committing the second?' 79 Ariz. at 119, 285 P.2d at 162." *State v. Sutton,* 104 Ariz. 317, 318, 452 P.2d 110, 111 (1969). See also *State v. Branch,* 108 Ariz. 351, 498 P.2d 218 (1972).

Sodomy can be committed with the victim's consent, *State v. Bateman,* 113 Ariz. 107, 547 P.2d 6 (1976), cert. den. 429 U.S. 1302, 97 S.Ct. 1, 50 L.Ed.2d 32 (1976), and therefore without an assault. See *State v. Sims,* 114 Ariz. 292, 560 P.2d 810 (App. 1977); see also *State v. Alkhowarizmi,* 101 Ariz. 514, 421 P.2d 871 (1966), where both participants were prosecuted. Since the use of force or violence is not a necessary element of the crime of sodomy, we find no infirmity in Sustaita's separate convictions for the two separate crimes of assaulting his victim and thereafter sodomizing him.

## PROSECUTORIAL MISCONDUCT

The defendants contend that certain arguments, insinuations, and tactics used by the prosecutor were so improper as to deny them a fair trial. We first consider their allegations separately.

### a. As to the Defendant Sustaita

In attempting to impeach defendant Sustaita's credibility on cross-examination, the prosecutor posed the following questions:

"Q Mr. Sustaita, let's talk about your background a little bit.

"I'm sorry. Did you indicate that you have been convicted of a felony?

"A Yes, sir, I have.

"Q On how many occasions?

"A Two or three, I think.

"Q Well, you—

"A I don't remember. It's been quite a while back.

"Q Well, you said two counts of forgery; is that right?

"A Yes, sir.

"Q And those are both felonies, you indicated, right?

"A Yes, sir.

"Q And then, the more recent charge for which you're in jail is aggravated assault on a woman; is that correct?

"A That's right."

Sustaita's counsel moved for a mistrial, claiming that the phrase "on a woman" was gratuitous and highly prejudicial. The trial court agreed that the phrase "on a woman" should not have been used but denied the motion for a mistrial. We have stated:

" * * * The general rule is that the state may ask the defendant, when he is a witness, whether he was previously convicted of a felony and the nature thereof. See *State v. Sorrell,* 85 Ariz. 173, 333 P.2d 1081 (1959); *State v. Polan,* 78 Ariz. 253, 278 P.2d 432 (1954); *Hadley v. State,* 25 Ariz. 23, 212 P. 458 (1923); and *West v. State,* 24 Ariz. 237, 208 P. 412 (1922). * * * " *State v. Corrales,* 95 Ariz. 401, 405, 391 P.2d 563, 566 (1964).

■ In the instant case, it was proper to ask the defendant whether he had been previously convicted of a felony and the nature of the offense. *Corrales,* supra. The record in this case reflects that the defendant was in jail as a result of a conviction of aggravated assault. The phrase "on a woman" went further and was an obvious attempt on the part of the prosecutor to prejudice the defendant in the minds of the jury. It was error. We do not believe, however, that this error requires a reversal. The jury, of course, knew that the defendant was in jail for something and the fact that he had been convicted of aggravated assault was admissible. Considering all the facts in evidence before the jury, we feel that beyond a reasonable doubt the error did not contribute to the verdict and was therefore harmless. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). We have also stated that "[m]isconduct alone will not cause a reversal" and that "a new trial should not be granted to punish counsel for his misdeeds, but [only] where

the defendant has been denied a fair trial as a result of the actions of counsel, * *." *State v. Moore,* 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972). We do not believe that the trial court abused its discretion in denying the motion for mistrial. *State v. Noles,* 113 Ariz. 78, 546 P.2d 814 (1976).

### b. As to the Defendant Gonzales

■ Defendant Gonzales alleges that on two occasions the prosecutor sought to bring to the attention of the jury, through insinuation, matters which he knew would be improper to present directly. During direct examination of a state's witness, William Burkett, a bench conference was held during which the prosecutor noted that his witness would testify that Sustaita had told him that he, Sustaita, "had fucked [the victim] the night before, and so had Paul Gonzales." At the request of Gonzales' attorney, the trial court instructed the witness outside the presence of the jury to testify only to what Sustaita had said about himself and not to what Sustaita had said about Gonzales. Shortly after eliciting Sustaita's admission, the following dialogue occurred between the prosecutor and his witness:

"Q Mr. Burkett, would it be fair to say you don't know what occurred after the time you left the trustee tank for that hour, to the time you got back?

"A Yes, sir.

"Q Okay. That is, you don't know firsthand what happened at that time?

"A I didn't see it."

Counsel objected, asking that the word "firsthand" be stricken and the jury instructed to disregard it. It is contended on appeal that the suggestion contained in the above quotation that the witness knew more than he was telling was an attempt to bring in, by indirection, evidence which would not have been directly admissible and thus constituted reversible error. We do not agree.

While the prosecutor's question may have carried the implication that the witness had received additional second-hand informa-tion, neither the question nor the answer suggested the content of that additional information or that Gonzales had assaulted the victim. We find no error.

■ Defendant Gonzales further contends that the prosecutor did not abide by an agreement not to mention the victim's pretrial identification of the defendant Gonzales. Because of the concern expressed by the defendant over the unavailability of the photographs used in the initial identification, the prosecutor had indicated to the court that he would not initiate any questioning during the trial concerning the victim's out-of-court identification of the defendant. Later, during the trial, the prosecutor concluded his direct examination of a jail employee with the following query:

"Q Mr. Fontes, just answer yes or no— at any time during the conversation, did [the victim] mention the names of any individuals or nicknames of any individuals?

"A Yes, he did.

"MR. ROLL (prosecutor): Okay. Thank you. I have no further questions."

Gonzales on appeal seeks reversal on the ground that the prosecutor improperly let the jury know of an out-of-court identification which he had earlier avowed he would not go into. We do not find this to be inferred from the testimony. We find no error.

### c. As to Both Defendants

Finally, both defendants contend that the prosecutor made improper statements in his closing arguments to the jury.

It should be noted that counsel for both sides have considerable latitude in their arguments to the jury and the granting or denial of a mistrial based upon such remarks is usually within the sound discretion of the trial court. *State v. Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973).

■ The general rule for determining whether an attorney's closing remarks are unduly prejudicial is:

" * * * Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks." *Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936). See also *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970); *State v. Puffer,* 110 Ariz. 180, 516 P.2d 316 (1973).

It is first contended that the prosecutor's repeated reference to the felony convictions of various witnesses, including the defendants', was so improper and prejudicial as to deny the defendants a fair trial. The prosecutor's discussion of the witnesses' prior felony convictions was for the purpose of impeaching their credibility and as such was legitimate. *State v. McDonald,* 111 Ariz. 159, 526 P.2d 698 (1974); *State v. Mayes,* 110 Ariz. 318, 518 P.2d 568 (1974). Since the prosecutor's discussion did not call to the jury's attention matters it would not have been justified in considering, *Sullivan,* supra, it did not constitute grounds for reversal.

■ In addition to arguing the lack of credibility of certain of the witnesses, the prosecutor pointed out at length that witnesses to a "jail sodomy" might be less willing to testify than witnesses to sexual assaults that occur outside of the jail because of fear of later reprisal.

It is contended that this argument constitutes an invitation for the jury to accept a lesser standard of proof of guilt in a jail sodomy case than would be applied in other cases. We find nothing improper in a prosecutor's pointing out the evidentiary problems peculiar to a particular case. But even if the remarks, in the absence of proper instruction, might cause the jury to convict on a lesser burden, the jury was properly instructed as to the proper burden of proof for a criminal case. We find no error.

■ In his rebuttal argument, the prosecutor attempted to counter the defense counsels' comments on the State's failure to produce many corroborating witnesses. The prosecutor commented on the reluctance of jail inmates to testify and stated:

"Mr. Klein mentioned—or, Mr. Axelrod, I'm not sure which one—that five or six people were out of jail at this point and why didn't the State produce them. Well, in the first place, you think we didn't try to locate any of those individuals? And, secondly, those questions were directed to whether or not those people were still in the Pima County Jail. Some of them have gone on to bigger and better things in the Arizona State Prison. They're not around anymore. But, of course, that is—that is—it can't be brought out."

It is contended that these statements were improper in that they contain assertions of matters not in evidence and not admissible. Even if we agree, we do not believe the statements were so prejudicial, offensive, or inflammatory as to require reversal:

"We do not countenance either party to a lawsuit alluding to matters which do not appear in evidence as part of the record, but we have held repeatedly that remarks invited by a defense attorney will not ordinarily be considered as reversible error. (citations omitted)" *State v. Armstrong,* 103 Ariz. 174, 175, 438 P.2d 411, 412 (1968).

■ Finally, at the beginning of the prosecutor's rebuttal argument, he commented on the defense counsels' objections during his opening statement by pointing out that he "wanted to wait until after they were through speaking" before commenting on what they said. Defendants moved for a mistrial claiming it was an improper comment on defense counsels' objection during the State's opening argument. The motion for mistrial was denied and this is assigned as error on appeal. We have read the remarks and we do not believe they are in the least bit prejudicial. We find no error.

■ Although we have discussed each claim of prosecutorial misconduct individually, we have also considered them cumulatively and have found that taken together they did not deprive the defendants of a fair trial. We have stated:

" * * * Whether or not improper argument in a criminal case has influenced the verdict must be left to the sound discretion of the trial court on motion for a new trial. (citations omitted) * * * If there has been no abuse of that discretion and it appears that substantial justice has been done the court will not reverse the judgment. * * * While the remarks were improper we see nothing in them calculated to inflame the minds of the jurors with passion or prejudice or influence the verdict in any degree." *State v. Merryman,* 79 Ariz. 73, 74–75, 283 P.2d 239, 241 (1955).

The decision of the Court of Appeals, Ariz.App., 583 P.2d 256 (1977) is vacated. Convictions are affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN, and GORDON, JJ., concur.