HAYS, Justice.
Appellant Alexander Stewart was convicted of armed robbery (A.R.S. § 13-1904), and the jury found that he had been previously convicted of four felonies. (One conviction was for escape, and the remaining three were crimes of assault while armed.) Appellant was sentenced to thirty-five years imprisonment, to run consecutively to the term of imprisonment he must serve in New Jersey. The Arizona Court of Appeals reversed appellant’s conviction. State v. Stewart, 139 Ariz. 66, 676 P.2d 1124 (1983). We granted the state’s petition for review and vacate the opinion of the court of appeals. We have jurisdiction pursuant to Ariz. Const, art. 6, § 5(3), and A.R.S. § 13-4038.
Appellant’s basic argument on appeal deals with the fact that he was shackled during the trial, and gagged for a portion of the trial. Solely on the issue of shackles, the court of appeals reversed.
The record reveals that on July 18, 1980 at about 3:00 a.m., Steven Levine, who worked the night shift at a motel in Tempe, noticed a white over burgundy late model hard-top (it was later found to be a Cadillac) enter the motel parking lot. He became suspicious, and he called the Tempe Police Department. He thought there were two black people in the car, which then left the parking lot.
Within minutes, two black men entered the motel. The men leaned over the counter and inquired about a room. After a short discussion, the men said they would take a room. Levine asked for identification in response to which appellant, who Levine described as wearing a green T-shirt and army-style fatigue pants, and being five-seven or eight, dark skinned, with high cheekbones, and an oblong head, produced a small handgun with a dull chrome finish from a rear pocket and indicated that it was his identification.
The men ordered Levine into a back room and told him to lie face down on the floor with his hands behind his head. He was then ordered to get up and open the cash register, which he did. The men ordered Levine to lie on the floor again. He was asked if there was any more money, and he told the men that there was money in a safe deposit box. One of the men was binding Levine’s legs when one of them said that the police had arrived. The men then ran out a rear door. Two police officers then arrived; one stayed with Levine and the other pursued the robbers without success.
Just after receiving a radio broadcast about the robbery, Lieutenant Kishiyama of the Tempe Police Department saw what he described as a white over maroon vehicle coming toward him. He saw two occupants. He made a U-turn to pursue the vehicle and it accelerated. After a short chase the vehicle came to a stop in a parking lot. Approaching the vehicle, the lieutenant saw two black males run from the car. One man remained at the vehicle.
Levine was brought to the vehicle for an on-the-spot identification. He could not identify the black male who remained with the car. Levine was taken to two other locations and asked if he could identify the black males there. He could not. He was taken back to the motel.
The police brought in a helicopter to search for the two men who fled from the vehicle. Approximately 45 minutes after the helicopter search began; appellant was found. He was partially concealed in a small cave and behind a rock on A-Butte in Tempe. On the other side of A-Butte is the Tempe Police Department. The place appellant was found is approximately 250 yards from where the Cadillac came to a stop.
The arresting officer testified that he took the gun, which Levine identified in *53 court, from appellant at the time of his arrest. Appellant was wearing a pair of fatigue pants and a black tank top shirt.
A few moments later Levine was brought to the bottom of A-Butte. He testified that as soon as he saw appellant he knew that appellant was one of the men who robbed him, although he waited until the police asked him if he could identify appellant before he said anything. Other facts will be discussed as necessary.
SHACKLES
The point most strenuously urged by appellant as error, and the point on which the court of appeals reversed appellant’s conviction, is that appellant was shackled throughout the trial (except for voir dire of the jury, for which he wore an under-the-trouser leg brace). Appellant argues that it was reversible error to shackle appellant because the motion to shackle was untimely, the restraint was more severe than necessary, and the court did not adequately admonish the jury to disregard the shackles.
Appellant argues that Arizona Rules of Criminal Procedure, rule 16.1(b) (“motions shall be made no later than 20 days prior to the date set for trial”) barred the state from bringing this motion for the first time on the day scheduled for trial. Appellant also cites State v. Superior Court, 127 Ariz. 175, 619 P.2d 3 (1980), for the proposition that the 20-day time limit is computed from the first trial setting and not from the date the trial actually commences. The consequence of failing to follow rule 16.1(b) is provided in rule 16.1(c) (the issue is precluded unless the basis therefor was not known or by reasonable diligence could not have been known). The trial date was originally scheduled for September 22, 1980. The hearings on several pretrial motions and continuances requested by both sides caused the date to be moved to March 24, 1981. It was on the latter date that the motion was made.
[1-3] We disagree with the contention that the motion to shackle was untimely. We hold that a motion to shackle is not governed by the time limitation of rule 16.1(b). As this court said in State v. Delvecchio, 110 Ariz. 396, 400, 519 P.2d 1137, 1141 (1974):
A trial judge has not only the right but the responsibility of seeing that trials are conducted properly and without disruption, and he is allowed to take those necessary measures to provide for the orderly disposition of criminal cases.... A criminal trial is coercive in nature and a defendant will seldom voluntarily submit to such a trial.
We find that the trial judge did not abuse discretion in hearing this motion. We also note that the judge gave appellant every opportunity to present witnesses in his behalf, and appellant does not allege that evidence or witnesses were unavailable to him which would have been available if the motion had been heard earlier.
Assuming arguendo the time limitation of rule 16.1(b) applied, appellant’s deliberate lies to the state and court prevented the state from discovering appellant’s true identity until the September 2, 1980 deadline for filing pretrial motions had passed. On December 11, 1980, Judge Seidel (who was one of the judges to hear pretrial motions in this matter) was considering releasing appellant from jail with property taken as security. At that hearing appellant, who then called himself Ricky Brown,[1] stated, “I never been in trouble before, Your Honor, and I have no reason, you understand, not to show up in court or, you know, flee or anything like that because, you know, I’m confident that I be acquitted of this charge.” Later that day, before appellant was to be released, the state learned that appellant had prior felony convictions in New Jersey under the name of Alexander Stewart. In explaining *54 his previous statement to Judge Seidel appellant said:
Yes, your Honor, I am not playing games. I lied, I did lie, just like any American true blue boy would, I was in trouble, I didn’t tell the truth. As Churchill said, sometimes it is harmful and so detrimental to one’s self, you have got to be protected by a pack of lies. I lied. I had to lie. Like I was in trouble. What am I supposed to do, I mean? Under the Declaration of Independence, under the State’s pursuit of happiness and freedom, I did like anyone in trouble would do, like Nixon, Agnew, like they lied about the bombing of Cambodia, the Watergate tapes, many people in trouble and other people deny it. I couldn’t tell my name, I don’t expect anyone to do that. What can I do? I am a fugitive. What can I do, your Honor? I tried to hide my identity because I wanted to get away from this, wanted to better myself. I don’t like jail scenery, I don’t want to go back there.
This man don’t understand. When you are a fugitive, man, you don’t tell people who you are. The game would be up if you say yes, my name is Alexander Stewart, and you run away from, you know, from Jersey, you know. I keep trying to tell them, you know, how much do you expect out of me? I mean, a man has got a right to preserve his freedom. You try to get out of the cage, try to get away from a bad situation.
Like I said, I was on the run, your Honor. I wish you would consider that, you know. If I wasn’t in any trouble, I would tell you everything about me, but I couldn’t. I would just be deeply in trouble. I had to preserve myself by telling a pack of lies.
Thus, appellant’s deliberate obstruction prevented the state from gathering this information in a timely fashion.
Appellant next argues that the trial court committed reversible error in shackling appellant. As we said in State v. Reid, 114 Ariz. 16, 22, 559 P.2d 136, 142 (1976), cert. denied, 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977), whether a defendant will be shackled is within the sound discretion of the trial court. In Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), the Supreme Court said:
We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.
In Reid we also said:
It was a rule at common law that a defendant being tried for a criminal offense had the right to make his appearance in court free from all shackles. Manacling a person when there is no necessity to do so, and bringing him into court in the presence of the jury could not be too strongly condemned.
Reid, supra, 114 Ariz. at 22, 559 P.2d at 142 (quoting State v. Robinson, 6 Ariz.App. 419, 422, 433 P.2d 70, 73 (1967), overruled on other grounds, State v. Newman, 122 Ariz. 433, 595 P.2d 665 (1979)); accord Allen, supra, 397 U.S. at 344, 90 S.Ct. at 1061 (“no person should be tried while shackled and gagged except as a last resort.”).
When a defendant objects to being tried in shackles, there must be support in the record for the trial court’s decision. Reid, supra, 114 Ariz. at 22, 559 P.2d at 142. The record indicates that appellant had prior felony convictions for crimes of violence and a conviction for escape. He also admitted that he was wanted again for escape in New Jersey. The second escape was made while he was outside of a hospital on his way to court. He was being escorted by two guards and his hands were handcuffed behind his back.
Appellant was involved in an incident during a pretrial hearing in this case, which was not heard by the trial judge. After appellant was told he could not, for the *55 time being, represent himself, appellant told the judge:
Don’t make me get hostile. I don’t want to have to start attacking people physically. But I’m telling you, you put me in that position. If you send someone to represent me, he is going to be subjected to an attack. If you send somebody to represent me, you are going against my will. I don’t want nobody to represent me. I have a right to represent myself. The Supreme Court says I have a right to represent myself.
This is a flim-flam court, man. This is white justice. One law says you can represent yourself; the other one says you can’t. I said I’m going, man.
THE COURT: With respect to Cause Number CR-113888 the record should reflect that Mr. Brown had to be forcibly removed from the courtroom.
The judge who was presiding over the case when this incident occurred later testified:
A. I think in the face of frustration, Mr. Brown is, his self-discipline tends to deteriorate, then he acts on a — on an overly impulsive level when he doesn’t seem to be getting what he expects to get by acting more rationally.
Q. In the face of frustration, does he become violent?
A. Well—
Q. In your opinion?
A. I think his violence in my courtroom was precipitated by the deputy trying to take him out. I think the deputy — I had instructed him to do that, so obviously the deputy was completely within doing what he was supposed to be doing, and I think that is what, in both instances, precipitated the violence in my courtroom.
Now, I don’t know if I have ducked your question or not, Mr. Knopf, I did not intend to do so, but I try to be very careful about it.
Q. What do you view Mr. Brown’s courtroom behavior to be?
A. Erratic.
The deputy with whom appellant struggled testified:
A. After Judge Maroney listened to Mr. Brown for a while, he then asked me to escort him out of the courtroom.
Q. And, what occurred?
A. I eventually got to Mr. Brown on his feet, moved him toward the door. Say he would have been sitting at the table where you are, we got him over to the other table when he turned and came back at me. He either struck me with his hand or his head in the chest, knocking me off balance.
Q. What happened then?
A. I reached out, grabbed ahold of him, and we struggled. We fell backward over a chair and ended up on the floor.
Q. What did you do then?
A. I finished subduing him and then he said that he would quiet down, and I escorted him out of there.
Q. Did he attempt to get away from you?
A. I feel—
MR. COFFINGER: Objection, that calls for a conclusion.
MR. BROWN: Yes.
MR. KNOPF: I think the witness is qualified.
THE COURT: Overruled.
Q. (BY MR. KNOPF) Did he attempt to get away from you?
A. I feel it was an attempt to assault me and escape.
Q. During this time, was the defendant also talking?
A. He didn’t say too much while the struggle was going on, there may have been a yell or something, but that was about it.
Q. Do you recall any particular conversation at this time?
A. Other than when I got him down on the ground, he finally gave up and said that he would go, that he would give up.
Q. At that time, how was he handcuffed or shackled or whatever?
A. He only had handcuffs on him.
*56 Q. This happened while he had handcuffs on him?
A. It did.
Q. No other restraints on him?
A. No.
We also note that the trial court observed appellant throughout this hearing. More than once the trial court told appellant to observe proper courtroom decorum.
We find that the decision to shackle appellant is supported by the recofd, and we find that the trial court did not abuse its discretion. See State v. Starks, 122 Ariz. 531, 534, 596 P.2d 366, 369 (1979) (defendant committed armed robbery while effecting an escape during a pretrial hearing and shackling defendant was not error); see also State v. Johnson, 122 Ariz. 260, 272, 594 P.2d 514, 526 (1979) (sheriff provided information to court concerning prior violent conduct of appellants); State v. Watson, 114 Ariz. 1, 11, 559 P.2d 121, 131 (1976), cert. denied, 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977) (sheriff thought defendant was an escape risk); State v. Moore, 110 Ariz. 404, 406, 519 P.2d 1145, 1147, cert. denied, 419 U.S. 871, 95 S.Ct. 131, 42 L.Ed.2d 110 (1974) (defendants had lawless and violent natures and were being tried on allegations of serious and violent crimes).
Finally, we note that the court of appeals reversed, in part, because the trial judge escalated the restraint from an under-the-trouser leg brace to fully visible shackles without, the court of appeals said, good cause. We note that the judge’s reasons for his actions appear in the record. The hearing concerning shackles was interrupted so voir dire of the jury could be conducted. The court quite properly chose to restrain appellant even though all the evidence was not taken on the issue of shackling. Once the hearing concerning shackling was concluded, the court ordered appellant shackled. Moreover, after voir dire, but before the decision on shackling, the court was informed that appellant last escaped from two guards while his hands were handcuffed behind his back.
Appellant contends that the trial judge did not properly admonish the jury concerning appellant’s shackles. The court’s only comment concerning the shackles appeared in the instructions. The court said:
You must not let the fact that defendant was gagged and shackled during the trial affect your decision as to his innocence or guilt. That fact should not have any bearing on your decision.
We think this instruction was sufficient. See State v. Settle, 111 Ariz. 394, 396, 531 P.2d 151, 153 (1975) (“It is the judge’s duty to instruct the jury upon ... ‘matters vital to a proper consideration of the evidence.’ ”). The record shows that the trial judge was very concerned about the impact on the jury of appellant’s shackles. The judge used this instruction and gave it when he did to avoid unnecessary emphasis of the shackles. The trial judge handled this sensitive issue with due regard to appellant’s rights.
USE OF A GAG
Appellant next argues that it was reversible error to gag him and to revoke appellant’s right to represent himself. Before trial began, appellant asked and was allowed to represent himself. Advisory counsel was appointed to assist him. The court also granted the state’s motion in limine that required appellant to refrain from stating in front of the jury that he wanted a lie detector test. The state indicated that appellant demanded a lie detector test during a New Jersey trial while the prosecutor in that case was making his closing argument to the jury.
While the prosecutor was questioning the victim the following occurred:
MR. BROWN: Your Honor, I’m going to take a lie detector test, I told these people I wanted to take a lie detector test from day one.
THE COURT: I order you to sit down.
MR. KNOPF: You have ordered him to—
THE COURT: You stay out of it.
*57 MR. BROWN: I didn’t rob anyone, Your Honor. I asked this man to give me a lie detector test from—
THE COURT: I ask the jury to withdraw. I would ask the jury to withdraw right now. Please go to the jury room.
Previously appellant had informed the jury of the victim’s misdemeanor conviction, which was in direct violation of another of the court’s pretrial orders. In Delvecchio, supra, we said:
If a defendant, while exercising his right to represent himself, is able to disrupt a criminal trial to the point that a trial cannot be had, conceivably he could never be convicted of the crime of which he might be guilty. In the instant case the defendant, by his own actions, lost the right to continue the conduct of his own trial. A defendant may not assert his right to represent himself and then by his conduct make it impossible for that right to be exercised. We find no error.
110 Ariz. at 400, 519 P.2d at 1141.
We find that gagging appellant was not reversible error. Appellant had demonstrated that he would violate court orders at any time to gain his ends, even if that meant disrupting the court proceedings. After he was gagged he obviously could not represent himself and it was not error to have the advisory counsel continue the trial as counsel of record.
PROSECUTOR’S STATEMENT
Appellant argues that the prosecutor prejudiced appellant when the prosecutor stated in open court that appellant had prior felony convictions. During the trial, appellant told the trial judge he wished to testify. The trial judge informed appellant that he was obligated to answer questions on cross-examination and appellant said he understood that obligation. Nonetheless, after appellant testified on direct examination, the following transpired:
THE COURT: Cross-examine.
THE WITNESS: I’m not answering any questions from — I have my mouth taped, I’m not answering any questions from him.
MR. KNOPF: I request that I be allowed to ask questions to the witness and that, as he stated on the record—
THE WITNESS: I’m not answering any questions, you wanted my mouth taped, you got it.
MR. KNOPF: This is sworn testimony, I request that he remain on the witness stand.
THE COURT: Bring him back over. I want him to deny it again, bring him back over right—
CROSS-EXAMINATION
BY MR. KNOPF:
Q. Mr. Brown, I’m going to—
A. I won’t answer any questions from you.
Q. Mr. Brown, I’m asking the questions, not you.
A. You’re not asking any questions.
Q. Mr. Brown, I’m asking the questions.
THE COURT: Let him finish the question.
Q. (BY MR. KNOPF) Mr. Brown—
THE COURT: Ask the question.
Q. (BY MR. KNOPF) I’m going to ask you very simple questions that will require a yes or no—
A. I’m not answering any of your questions. You didn’t want me to talk at this trial, I’m not going to answer, no.
THE COURT: Do you want me to order him?
THE WITNESS: I’m not going to set here and listen to this man after he wanted my mouth taped. I asked this man to take a lie detector test—
Q. (BY MR. KNOPF) What is your name?
THE COURT: Ask the question.
Q. (BY MR. KNOPF) What is your name?
THE COURT: Ask the question, the next question.
Q. (BY MR. KNOPF) Isn’t it a fact that you were not only known as Ricky Brown, Mr. Brown—
*58 A. My name is Ricky Brown, and this is ridiculous to even sit up here.
Q. Mr. Brown, answer my question, are you known by any other name?
A. Your Honor, do I have to sit up here and listen to this? I told him I’m not—
THE COURT: Answer the question. What is the next question?
DEPUTY WESTERMEYER: Sit down, Ricky. Sit down, Ricky.
THE WITNESS: I’m not going to answer this man’s questions.
MR. KNOPF: I wish to put this before the jury, I will ask the question—
THE WITNESS: I’m not answering any of your questions. You wanted my mouth—
THE COURT: Continue the questioning.
Q. (BY MR. KNOPF) Is it also not true that you are known as Val Stewart?
MR. COFFINGER: Your Honor, I think we ought to make a record outside the presence of the jury.
MR. KNOPF: I think if the Court controls this witness—
THE WITNESS: I don’t have to sit here.
THE COURT: That’s all. Ladies and gentlemen, Mr. Brown was advised that—
MR. KNOPF: Your Honor, Your Hon- or, may I ask one more question?
THE COURT: No, sir.
Q. (BY MR. KNOPF) Isn’t it true—
THE COURT: No, sir.
THE WITNESS: Mr. Coffinger, I don’t have to answer questions of this man.
MR. KNOPF: Your Honor, may I approach the bench?
MR. BROWN: He shouldn’t have taped my mouth, I won’t answer his questions.
(Whereupon, a discussion was held off the record.)
MR. KNOPF: Your Honor, I wish to state for the record that I wish to bring out the facts that Mr. Brown has prior armed robbery convictions—
MR. COFFINGER: Objection, I told you this should be out of the presence of the jury. I have to make a motion out of the presence of the jury now.
THE COURT: Well, I’m going to advise the jury one thing, Mr. Brown said he would answer the questions on cross-examination.
MR. BROWN: I plead—
THE COURT: He was advised if he did not, that you would be instructed to disregard his answers on direct. You are now advised to disregard all of his testimony on direct, and it is ordered stricken from the record.
At the motion for new trial the prosecutor explained:
I think to say that we all knew full well from the beginning that Mr. Brown was only going to give direct examination and then proceed to not answer the prosecutor’s questioning would be misleading. I think the Court was under the belief, and the prosecutor was under the belief that Mr. Brown would be answering questions on cross-examination. It goes back to the situation that the entire sequence of events are important to realize, and the State still submits this was invited error, and furthermore, harmless error.
MR. COFFINGER: Nothing further, Your Honor.
THE COURT: To give a little guidance to the Supreme Court in order to review this, the county attorney was entitled to ask questions, it was not my intention to cut him off, it turned into a shouting match is why I did turn him off.
In State v. Sustaita, 119 Ariz. 583, 592, 583 P.2d 239, 248 (1978) (quoting State v. Corrales, 95 Ariz. 401, 405, 391 P.2d 563, 566 (1964)), we said “ ‘[t]he general rule is that the state may ask the defendant, when he is a witness, whether he was previously convicted of a felony____’” In the instant case, the prosecutor wanted to impeach appellant by divulging his prior convictions. Were it not for the unjustified refusal of *59 appellant to answer questions on cross-examination, there would be no hint of impropriety in the prosecutor’s conduct. However, because the prosecutor was told to cease the cross-examination before he made his statement (when the statement was made appellant’s direct testimony had not been stricken), we assume, without deciding, that the prosecutor’s statement concerning appellant’s prior convictions constitutes misconduct.
In Sustaita, supra, we said:
“[m]isconduct alone will not cause a reversal” and that “a new trial should not be granted to punish counsel for his misdeeds, but [only] where the defendant has been denied a fair trial as a result of the actions of counsel, * *.” (citation omitted)
Id. 119 Ariz. at 592-93, 583 P.2d at 248-49.
After the events outlined above took place, the trial judge admonished the jury not to consider the direct testimony of appellant and the prosecutor’s statement. We find that the prosecutor's statement, in light of the court’s admonishment, was not prejudicial to appellant. See State v. Garner, 116 Ariz. 443, 448, 569 P.2d 1341, 1346 (1977). We hold that, based on the facts in evidence before the jury, any error was harmless. See State v. Hensley, 137 Ariz. 80, 88, 669 P.2d 58, 66 (1983).
EXHIBIT 21
Appellant argues that the trial court committed reversible error by admitting Exhibit 21 into evidence. Exhibit 21 is an adding machine tape that indicates the denominations of bills taken from the motel cash register. Appellant claims that although the prosecutor gave him some police reports, one of which contained the actual figures found in Exhibit 21, he was still taken by surprise because the prosecutor did not prepare and furnish appellant with a list of the exhibits he sought to use at trial.
Appellant bases his argument on Arizona Rules of Criminal Procedure, rule 15.1(a)(4) (the prosecutor shall make available to the defendant a list of all papers or documents the prosecutor will use at trial). The remedy he sought in the trial court was based on rule 15.7(a)(4) (preclusion of the evidence). We find the trial court did not commit reversible error in admitting Exhibit 21.
As we said in State v. Lawrence, 112 Ariz. 20, 22, 536 P.2d 1038, 1040 (1975), “[t]he underlying principle of Rule 15 is adequate notification to the opposition of one’s case-in-chief in return for reciprocal discovery so that undue delay and surprise may be avoided at trial by both sides.” Whether to impose sanctions and the choice of sanctions for a violation of disclosure is within the sound discretion of the trial court. State v. Jessen, 130 Ariz. 1, 4, 633 P.2d 410, 413 (1981). The trial court’s decision will not be reversed on appeal absent a showing of prejudice. Id.
We think no abuse of discretion or prejudice is shown in this case. When appellant was acting as his own attorney, while cross-examining a state’s witness, he brought out the same information that is contained on Exhibit 21.
We find that admitting Exhibit 21 was not reversible error, as the evidence it contained was cumulative in any event. Although we find no reversible error in this case, we note that rule 15.1(a)(4) is unambiguous in its requirement that the state prepare a “list of all papers, documents, photographs or tangible objects” the prosecutor will use at trial.
SENTENCE
Appellant’s last argument[2] is that the trial court unlawfully made his sentence consecutive to the sentences he must serve in New Jersey. We find this claim to be without merit.
*60 When a consecutive sentence is imposed by a trial judge, he must state his reasons for the sentence on the record. A.R.S. § 13-708; see Arizona Rules of Criminal Procedure, rule 26.13. A sentence that is consecutive to that of another jurisdiction is lawful. See State v. Sutherland, 14 Ariz.App. 344, 347, 483 P.2d 576, 579 (1971). In the instant case, the trial judge found that appellant had: 1) an accomplice; 2) prior felony convictions; 3) been unsuccessful on probation; 4) committed this offense while an escapee from New Jersey; 5) committed the crime for pecuniary gain; and 6) used a dangerous weapon. The trial judge concluded that appellant is a threat to society.
We have reviewed the record for fundamental error pursuant to A.R.S. § 13-4035 and have found none. The opinion of the court of appeals is vacated and the judgment of conviction and sentence are affirmed.
HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.

. After appellant had indicated a fifth alias, the trial judge asked what appellant’s name was, to which he replied, "my name, to the best of my knowledge, you know, my name is Ricky Brown."

. Appellant claimed in his opening brief, in one sentence, with no citation of authority, that his sentence was excessive. He did not address the claim in his reply brief. We find this claim was never properly raised.