139 Ariz. 66 (1983)
676 P.2d 1124
STATE of Arizona, Appellee,
v.
Alexander STEWART aka Ricky Brown, Appellant.
No. 1 CA-CR 5381.
Court of Appeals of Arizona, Division 1, Department A.
March 10, 1983.
Rehearing Denied May 6, 1983.
Review Granted June 30, 1983.
*67 Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Diane M. Ramsey, Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.
Law Office of Richard D. Coffinger by Richard D. Coffinger, Glendale, for appellant.
OPINION
KLEINSCHMIDT, Judge.
This case presented the trial judge with a difficult and sensitive problem in deciding what security measures were appropriate at the trial of a defendant who was a proven escape risk. We are keenly aware that a cold record is a poor substitute for presence at trial and that great deference is to be accorded to the trial judge who has, among his other duties, the responsibility for overseeing the security of his courtroom. The trial judge conducted this taxing case with becoming decorum and patience. We nonetheless reverse because we believe that shackling the appellant was too drastic a measure to employ under the circumstances, that it was done for the wrong reason, and that it prejudiced the appellant's right to a fair trial.
The appellant, Alexander Stewart,[1] was charged with and convicted of armed robbery, a class 2 dangerous felony offense. He was also found guilty of prior felony offenses and was subsequently sentenced to an enhanced punishment of 35 years in prison, to run consecutive to all sentences previously received on other convictions in the State of New Jersey.
A number of issues are raised but we decide the case on the first one presented. The appellant argues that the trial court erred when it ordered him shackled throughout his jury trial. The "shackles" included leg irons, a "belly-chain"[2] and handcuffs which were attached to the "belly-chain." Chains, handcuffs and leg irons were all easily observable by the jury. A photograph of the appellant, restrained as he was at trial, is a part of the record. Hereafter when we refer to "shackles" we mean all of the restraints described above.
*68 Following appellant's arrest in July of 1980, a number of motions, continuances, and hearings were held before various judges of the Superior Court of Maricopa County. On the day set for trial, March 24, 1981, the prosecutor moved to have the appellant tried in shackles. The appellant objected to the restraints, noting that they would have a prejudicial impact on the jury, and that such restraints would impair his right to represent himself.
In support of his motion the prosecutor called a deputy sheriff who testified to an altercation which had previously occurred in court between the appellant and the deputy in October, 1980. On the occasion of that incident, appellant was arguing his right to represent himself to the court and was objecting to further continuances of his case. When the judge tried to terminate the proceedings the appellant persisted in arguing and the judge instructed the deputy to remove appellant from the courtroom. The appellant struggled with the deputy and they both fell to the floor.
When the prosecutor had presented the deputy's testimony the appellant requested time to present evidence in opposition to the motion. The hearing, which we refer to as the "shackling hearing," stretched over portions of five days.
The judge who presided at the hearing at which the altercation had occurred and several witnesses to that incident testified at the shackling hearing and said that they did not interpret appellant's actions as an escape attempt. One deputy county attorney who witnessed the incident did view the altercation as an attempt by the appellant to evade the deputy. Another judge who had heard several motions filed by the appellant testified that appellant assaulted no one, attempted no escapes, was not disruptive and obeyed rulings in his court. Still another judge testified that appellant had not assaulted anyone or attempted an escape while in his courtroom.
The deputies who transported the appellant back and forth to court hearings generally testified that appellant had not been disruptive and had not attempted any escapes while in their custody. The defendant was shackled while being transported between the jail and the courtroom. The record is not entirely clear as to whether he was shackled during the various court proceedings described above but we assume that he was and that he therefore had little opportunity to escape.
A deputy county attorney testified that there was no untoward courtroom incidents involving the appellant other than the one in October, 1980. She further said that in her opinion shackles would help control appellant's verbal outbursts.
At the end of the third day of hearings the judge said:
THE COURT: I think we'll just recess and we'll draw the jury at 9:30 on Monday, then we'll recess and do whatever else we have to do on this subject.
MR. COFFINGER [advisory defense counsel]: Could I inform Mr. Brown as to whether he will be shackled when he is seen by the jury for the first time?
THE COURT: I will read the cases, it's my inclination to have him with one leg shackle. There will be no voir dire by counsel, it will be done by me, he can come and sit in the chair and before it is time for opening statements, I will make my decision on the rest of it.
MR. COFFINGER: May I understand for purposes of the deputies also, what the form of restraint that you have will be used on Mr. Brown on Monday?
THE COURT: The one leg shackle, what is that called, a leg brace.
MR. COFFINGER: The leg brace, on one leg?
THE COURT: Yes.
At this point in the hearing the prosecutor advised the court of and introduced evidence to prove that the appellant had previously been convicted of escape in New Jersey and was also being held on a fugitive warrant, allegedly having escaped, in handcuffs, while being transported between a courtroom and a hospital. After hearing this additional argument by the prosecutor the court stated:

*69 THE COURT: ....
I have advised everybody what I'm going to do and  what is your name, please?
MR. WESTERMEYER: Deputy Westermeyer, sir.
THE COURT: A leg brace prevents running, is that correct?
MR. WESTERMEYER: To some degree, yes, sir.
THE COURT: Well, it makes one leg stiff?
MR. KNOPF: All it requires is that you go around like this, with one leg stiff.
THE COURT: I don't think anybody can run very far with that on, that's what we've been told before in this court when they have it on, if you've got evidence to the contrary 
I want you to listen to this, Mr. Brown, because you just hollered an outburst that just about torpedoed all your evidence, I'm not going to tolerate any outbursts either when you are on the stand or when you are sitting at the table. We'll start with one leg brace, no cuffs on the hands, but one blot of improper decorum and I'm going to take whatever measures I deem necessary, and we only do that for the calling of the jury. Then, we will proceed with whatever hearings we have, and the jury will come back Tuesday.
This occurred on Friday afternoon. On the following Monday morning, after appellant initially refused to put on the leg brace, he was brought to the trial judge's chambers where he explained that he refused to put on the leg brace, urging the court not to require any restraint while the jury was chosen since the evidentiary hearing on whether he should be shackled had not yet been completed. The trial judge advised him that he would have to wear the leg brace, which would be concealed from the jury's view under appellant's pant leg. Appellant objected, but, nevertheless, put on the leg brace and wore it while the jury was impaneled.
After the jury was chosen, the trial judge continued with the shackling hearing, during the course of which the appellant presented additional witnesses.
The court examined a deputy sheriff regarding appellant's initial refusal to wear the leg brace the day the jury was to be impaneled. He also asked for and received the deputy's opinion that appellant should remain shackled for security reasons.
At the conclusion of the presentation of appellant's witnesses, the prosecutor argued that the court should take into consideration appellant's prior escape conviction, that he was presently wanted for escape in New Jersey, that live ammunition and a gun would be in evidence at trial, and appellant's previous disruptive conduct in court.
No new, substantial evidence had been presented to the trial court after the jury was impaneled, which would have either supported escalating the restraint from the leg brace already worn by appellant, or that would have required the trial court to eliminate all restraints.
The appellant's objection to wearing the leg brace on Monday morning, prior to having an opportunity to speak with the trial judge about wearing a restraint, apparently played a significant part in the trial judge's decision to forego the leg brace and simply have the appellant shackled in leg irons, a belly-chain and handcuffs. At the time this decision was made no reason was given for it on the record. Following the presentation of evidence, while instructions were being settled, the trial judge commented on his reason for shackling the appellant. He said:
THE COURT: I do not show this, but the defendant was brought in in leg irons when we drew the jury, then when the trial started, he refused to wear it. He was brought to Court shackled with the leg irons and after a long discussion in chambers, which he refused to wear it and I ordered him shackled, only then did he offer to wear the leg irons. I ordered him to be shackled because I didn't want to go through this every morning, so that is the history of why he is not in leg *70 irons and is in shackles all during the course of the trial, ....
[STEWART] MR. BROWN: You did not give me a choice of whether I wanted to wear the shackles or the leg brace.
We begin our analysis of this issue with the general rule that every defendant has the right to appear in court unfettered unless a compelling reason is placed of record which would justify the use of restraints. State v. Reid, 114 Ariz. 16, 559 P.2d 136 (1976).
A trial judge's right to preserve security and order in the court, even to the extent of shackling and gagging a defendant, has been recognized by the Supreme Court of the United States. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Accord, State v. Johnson, 122 Ariz. 260, 594 P.2d 514 (1979); State v. Starks, 122 Ariz. 531, 596 P.2d 366 (1979).
Shackling a defendant at trial is only to be used as a last resort. In Illinois v. Allen, the Supreme Court in discussing the treatment of disruptive defendants said:
But even to contemplate such a technique [binding and gagging a defendant], much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. (emphasis added).
397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970).
While the court in Allen was talking about shackling and gagging a disruptive defendant we believe the same principle applies to the use of shackles on a defendant who is an escape risk but not disruptive.
The entire issue was discussed in great detail in People v. Duran, 16 Cal.3d 282, 127 Cal. Rptr. 618, 545 P.2d 1322 (1976), where the Supreme Court of California affirmed the rule that a defendant cannot be subjected to physical restraints without a showing of manifest need and that where restraints are used they should be as unobtrusive as possible although as effective as necessary. The Arizona cases mirror these concerns. In State v. Watson, 114 Ariz. 1, 559 P.2d 121 (1976) the Supreme Court of Arizona stated, "We do not view with favor the shackling of a defendant except for the most compelling of reasons." 114 Ariz. at 12, 559 P.2d at 132. State v. Reid, supra, requires that the compelling reason to shackle appear of record and what has more important implications for this case, in State v. Johnson, supra, our supreme court, in approving the trial judge's decision to use leg shackles rather than handcuffs on the defendant during his jury trial, emphasized that the trial judge's decision to use the "least conspicuous, less challenging" restraint demonstrated that he had exercised his discretion so as to present the defendant in the "least oppressive light possible under the circumstances." 122 Ariz. at 272, 594 P.2d at 526.
The error in what happened at this trial lies in the failure to adequately consider and adopt the least drastic and unobtrusive measures necessary and the adoption of the more drastic measure for the wrong reason. While it was suggested that armed deputies stationed in the courtroom and at its doors might suffice to preserve security, the trial judge apparently rejected this idea. Such measures may be highly effective for preserving order and preventing escape and may be quite unobtrusive, particularly if plain clothes deputies are used. While we recognize that such is not a foolproof measure and that there may sometimes be limitations on available manpower the record is silent as to whether the trial judge seriously considered this approach or, if he did, why he rejected it.
*71 The use of the relatively unobtrusive leg brace which is worn under the pants and locks the leg in position so that quick movement is difficult or impossible was considered and the trial judge commented to the effect that a person could not run very far in such a brace. The trial judge rejected this device, apparently because the appellant "refused" to wear it. The record does not support the conclusion that the appellant refused to wear the brace. Further, by his own description of events, the trial judge concluded that once appellant had been ordered shackled he offered to wear the leg brace. If, as stated in Illinois v. Allen, an obstreperous defendant who has been removed from the courtroom can reclaim his right to be present by a promise of good behavior, so should acquiescence to the leg brace have redeemed the appellant from the shackles. In any event we see no reason why it was less of a problem to shackle the appellant than to require the leg brace.
Counsel for the state suggested at oral argument that appellant deliberately made a show before the jury of the restrictive leg brace. The record tends to support the conclusion because the appellant, having risen to his feet at the judge's entry into court was unable to sit down when the leg brace locked in place. Appellant purported not to know how to operate the brace and we express no opinion as to precisely what happened on the occasion in question. Even if the appellant was feigning for the record and flounting his restraints such does not change our opinion. It remains the duty of the court to use the least restrictive and least obtrusive security measures necessary to preserve order and prevent escape. If a defendant wants to parade his necessary restraints before the jury he, and not the court, is responsible for the consequences.
We would not have this opinion interpreted as a definitive instruction as to what a trial judge should do in every case.[3] The trial judge, who best knows what security devices and manpower resources are available, must have broad latitude to manage the courtroom and should be flexible in meeting each situation as it arises, always making sure to see that the record adequately reflects what actually transpires as well as the reasons which he believes justify such a decision.
The state suggests that any error committed would be harmless in view of what it characterizes as the overwhelming evidence against the defendant. While we will not recite all the evidence we have reviewed the record and note that the appellant was not arrested at the scene of the robbery, was identified by the victim in a show-up as opposed to a lineup, and that cross-examination showed several possible inconsistencies in the victim's identification of the appellant. We cannot say that the error was harmless beyond a reasonable doubt.
There is a final point that merits comment even though it does not touch on anything directly having to do with the guilt or innocence of the accused. One who views the photograph of the shackled appellant, appearing as he did to the jury, cannot help but be shocked by how demeaning these restraints were. What unjustifiably demeans the defendant demeans the court. If shackles are necessary so be it, but the dignity of the American courtroom that the Supreme Court speaks of in Illinois v. Allen is an important factor to be weighed in the balance.
Since it will be necessary to retry this case we will touch upon another issue raised by the appellant. He contends that the trial court committed reversible error by revoking the appellant's right to continue representing himself and ordering that he be gagged for the remainder of the trial *72 following an incident precipitated by the appellant. The order was based upon an outburst by the appellant during the examination of one of the state's witnesses. Before the trial started the state filed a motion in limine and advised the court that during a prior trial in New Jersey the defendant had jumped up during a prosecutor's closing argument and said in front of the jury, "I want a lie detector test." Following a hearing on this issue the court ruled that at no time was the defendant to blurt out that he wanted a polygraph test. During the course of the trial and in the presence of the jury the appellant did exactly what he had allegedly done in New Jersey  demanded a lie detector test. The court thereupon ordered him gagged for the remainder of the trial.
A reading of the entire record will show the appellant's conduct goes far beyond a lack of cooperation. He was aggressive, manipulative, and obviously well schooled in the law. It is probable that when the appellant is retried the trial court will be faced with the same problems all over again.
We suggest that any judge assigned to retry this case thoroughly acquaint himself with all of the teachings of Illinois v. Allen and its progeny,[4] that he be familiar with all of the physical facilities at his disposal that would permit the removal of the defendant from the courtroom and yet allow him to see the witnesses and the jury and communicate with his counsel, and that he be certain that the record fairly and adequately reflects the grounds and reasons for any action taken.[5]
Because the trial court abused its discretion in shackling the appellant in the presence of the jury this cause is reversed and remanded for a new trial.
CORCORAN, P.J., and CONTRERAS, J., concur.
NOTES
[1] The appeal was filed as Alexander Stewart (aka Ricky Brown). The appellant's true identity was not learned until some five months following his arrest.
[2] A chain around the waist.
[3] One grave threat to the security of the courtroom arises from the possibility that friends or confederates may attempt to rescue a defendant. We have taken into account the fact that another man fled from the car at the time the police stopped it and that such a person might potentially seek to assist the defendant to escape. This possibility was not raised at the shackling hearing, and indeed, without something more concrete, would not support the conclusion that in this case a potential rescue was a real concern.
[4] See, for example, Badger v. Cardwell, 587 F.2d 968 (9th Cir.1978) which discusses the nature of misconduct which will justify exclusion from the courtroom.
[5] Some of the comments of the judge who tried this case suggest that he was not completely aware of all of the facilities in the Maricopa County Court Building designed specifically to accommodate the trial of unruly defendants, even though the record shows that such facilities were alluded to and that they were available.