536 P.2d 1038

**The STATE of Arizona, Appellee,**

v.

**Edward Stanley LAWRENCE, III, Appellant.**

**No. 2951.**

Supreme Court of Arizona,
In Banc.

June 13, 1975.

Rehearing Denied July 14, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Frank E. Dickey, Jr. and Edward W. Parker, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from the conviction of Edward Lawrence III for the crime of second degree murder in violation of A.R. S. §§ 13–451, 452 and 453, and a sentence thereon of from 99 years to life in the Arizona State Prison.

Defendant, through his attorney, raises some 32 issues on appeal for this court's consideration. Many are without appropriate or adequate citation of authority and most are without merit. We have, however, pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), State v. Burrell, 96 Ariz. 233, 393 P.2d 921 (1964) and A.R.S. § 13–1715, considered each and every question raised and we find no reversible or fundamental error. Disregarding those issues clearly un-

meritorious, we feel that we must answer the following questions:

1. Was it error for the trial court to refuse to require further disclosure by the prosecution after the defendant had failed to provide disclosure to the State as required by Rule 15.2 of the Rules of Criminal Procedure 1973, 17 A.R.S.?

2. Was the sentence so excessive as to be an abuse of discretion?

The facts necessary for a determination of this case are as follows. The defendant Edward Stanley Lawrence III and the victim Linda Faye Lawrence were divorced in June of 1973. The victim had custody of their son about 4½ years of age and defendant was paying $100 a month for support. On the evening of 23 June 1973, the defendant visited the wife and there is some evidence that there was an argument. Defendant returned to his mother's and watched TV. Then, in his mother's presence, defendant tried to telephone his ex-wife. When there was no answer he returned to his wife's house for the avowed purpose of seeing to the safety of the boy. He entered the house and according to his statement to the police officer found his wife dead on the kitchen floor. He phoned the police at this time. Subsequent investigation revealed that the victim had been strangled to death. The defendant was questioned by the police and a complaint was refused by the County Attorney's Office at that time and the defendant was released.

Defendant was finally arrested on 30 October 1973. He was held to answer and the matter was tried to a jury. Although defendant did not testify, his defense appeared to be that he did not commit the crime. He was convicted and appeals.

## FURTHER DISCLOSURE BY THE STATE

After the information was filed in the Superior Court, the prosecutor, pursuant to Rule 15.1 of the Rules of Criminal Procedure 1973, made timely disclosure to the defendant.

Rule 15.2 provides for discovery by the defendant and reads in part as follows:

"b. *Notice of Defenses.* Within 20 days after the arraignment in Superior Court, the defendant shall provide the prosecutor with a written notice specifying all defenses as to which he will introduce evidence at trial, including, but not limited to, alibi, insanity, self-defense, entrapment, impotency, marriage, insufficiency of a prior conviction, mistaken identity, and good character. The notice shall specify for each defense the persons, including the defendant himself, whom he will call as witnesses at trial in support thereof. It may be signed by either the defendant or his counsel, and shall be filed with the court.

"c. *Disclosures by Defendant.* Simultaneously with the notice of defenses submitted under Rule 15.2(b), the defendant shall make available to the prosecutor for examination and reproduction:

(1) The names and addresses of all persons, other than the defendant himself, whom he will call as witnesses at trial, together with all statements made by them in connection with the particular case;"

Defendant's notice of defense read as follows:

"COMES NOW the defendant, EDWARD STANLEY LAWRENCE, III., by and through his present counsel, undersigned, and herewith files his compliance with A.R.S. Rules of Criminal Procedure, Rule 15.2(b) and (c), as follows: "At this point, defendant herewith offers as possible defenses under Rule 15.2(b), Alibi; Mistaken Identity; and Good Character; Insanity, only if evidence thereof 'comes to the attention of counsel; Innocence of any crime; and the Presumption of Innocence that is supposed to attend these proceedings from first to last: finally, defendant expressly reserves his constitutional right to

present any defense that may develop prior to trial but as to which present knowledge is lacking; or any defense of any nature whatsoever that may be presented by any discovery of the state's evidence, or upon presentation of that evidence at a trial on the merits, including Illegal Seizure of Evidence, whether testimonial or physical.

"Other than possibly the defendant and his mother (whose full name and address will be furnished the state upon discovery), further defense witnesses are not known at this time.

\* \* \* \* \* \*

"To the extent that Rule 15.2(b), or any other Rule, purports to require defendant to decide now whether he will later testify to any of the Defenses listed by him hereinbefore, said defendant herewith objects, and respectfully refuses to make any such decision, for the reason that such required pre-trial disclosure totally violates defendant's right to initial confrontation with his accusers, his unfettered right to benefit of aid of counsel, and most importantly, violates the constitutional protection of the presumption of innocence, and by its necessary import and tenor, infringes upon the accused's right not to testify if the evidence adduced at trial is deemed insufficient to sustain a jury verdict, and the unfettered constitutional right of the defendant to testify or not to testify at trial according to his sole prerogative; thus, this Rule amounts to a violation of the accused's right to have protection against testimonial compulsion, because the implicit holding in Rule 15.2(b) is that if the defendant fails to list himself as a witness as to any defenses listed, he will not be allowed to testify as to any such defenses in the trial on the merits—as gross a violation of his constitutional rights as could be imagined.' "

Later defendant filed a motion to compel additional discovery from the State. At the hearing on this motion the State resisted the motion. The State pointed out that

they had, in fact, given the defendant almost everything that the defendant was entitled to and the record before us supports this assertion. The State, however, resisted further discovery on the ground that the defendant had not complied with Rule 15.2. The trial court agreed with the State and so do we.

The underlying principle of Rule 15 is adequate notification to the opposition of one's case-in-chief in return for reciprocal discovery so that undue delay and surprise may be avoided at trial by both sides. The rule, to be effective, must be applied with equal force to both the prosecution and the defendant. Indeed, Rule 15.8 recognizes that if Rule 15.2(b) is unenforceable then 15.1(a)(1)(b) and (c) is null and void. The United States Supreme Court has approved this premise— that the defendant in a criminal case may, where there is reciprocity of discovery, be required to provide the State with certain information prior to trial:

"Notice-of-alibi rules, now in use in a large and growing number of States, (footnote omitted) are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. (citations omitted) The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in *Williams,* nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. 'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for [a rule] which is designed to enhance

the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.' (citations omitted) * * *" Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 2211–12, 37 L.Ed.2d 82, 86–87 (1973).

■ Defendant's notice of defense and disclosure pursuant to Rule 15.2 was wholly insufficient. Rule 15.7 allows the court to "impose any sanction which it finds just" for failure to comply with the notice of defense and disclosure rule. The defendant having elected not to comply with Rule 15.2 he cannot now be heard to complain when the trial court denies him further discovery from the State. The trial court applied a proper sanction in denying the defendant's motion for further discovery. We find no abuse of discretion.

## WAS THE SENTENCE AN ABUSE OF DISCRETION?

The defendant received a sentence of 99 years to life which is within the statutory maximum and minimum for the crime of second degree murder (not less than 10 years). A.R.S. § 13–453.

We note that the presentence report contained the following:

"It is this Writer's opinion that the defendant should not be granted probation at this time. It is felt that the character disorder diagnosed by Dr. Tuchler indicates that the defendant is an extremely poor risk to respond to rehabilitative efforts, and that his apparent lack of emotion, as well as his lack of honesty and cooperation, would not indicate a favorable response to any probationary program. In addition, it is felt that the defendant presents a significant danger to the community at the present time, and that he is in need of a relatively long period of incarceration to serve the best interests of the community."

Defendant's lack of remorse as well as his callous attitude was shown by the trial testimony of one of the victim's friends:

"Q Did you ever have occasion to speak with Mr. Lawrence after Linda's death?

"A Yes, sir.

"Q How many times?

"A I saw him at the funeral home the night of the viewing. Whatever the night before they buried her was.

"Q How did he appear on that day?

"A He was in a very good mood. He was happy and it was like a social occasion.

And I walked in the funeral home. I had only seen Ed that one time before, and he hugged me, and I was taken back on that, and then he never said anything about Linda, about her being dead.

We were six feet from the coffin and he asked me, he said, 'Is what's-his-name down here,' meaning my husband, and I said no.

He said you still going to move to Page later on, and I said, 'Yeah.' And he said, 'Well, let's get together, go out have dinner or something,' and he asked me for my address and I said, 'It's in the book.' And then he gave me his card and I said, 'Oh, I didn't know you were a photographer,' and he said 'Yeah,' he had been taking pictures.

He said, 'I'm going to start at Lockheed Monday.' I said, 'Oh?' He said, 'That's right. You didn't know that. I put one over on Linda, there. She didn't know it because she would have gotten more support.

At the same time, then, he asked me to introduce him to the girls that come with me from the office and he said, 'Linda was really popular at work, wasn't she?'

I said, 'All of us girls like her. She was real quiet and didn't know many people.'

**24**

He said, 'I want you to introduce me tomorrow at the funeral,' and I got real scared and left."

 The sentence was neither excessive nor an abuse of discretion. A.R.S. § 13–1715; State v. Burrell, supra.

Judgment affirmed.

STRUCKMEYER, V. C. J., and LOCKWOOD, HAYS and HOLOHAN, JJ., concur.