691 P.2d 1088

**STATE of Arizona,
Appellant/Cross-Appellee,**

v.

**Joyce LUKEZIC,
Appellee/Cross-Appellant.**

**No. 5940.**

Supreme Court of Arizona,
En Banc.

Nov. 29, 1984.

Thomas E. Collins, Maricopa County Atty. by Joseph L. Brownlee, Deputy County Atty. and Michael D. Jones, Sp. Deputy County Atty., Phoenix, for appellant/cross-appellee.

Thomas A. Thinnes and Craig Mehrens, Phoenix, for appellee/cross-appellant.

HAYS, Justice.

On August 4, 1982, a jury found appellee, Joyce Lukezic, guilty of eleven crimes: one count of conspiracy to commit murder; two counts of first degree murder; one count of attempted first degree murder; three counts of kidnapping; three counts of armed robbery; and one count of first degree burglary. On April 1, 1983, before sentence was imposed, the trial court set aside these judgments of conviction and ordered a new trial. The state of Arizona, appellant, appeals from the order granting a new trial. Appellee alleges deprivation of her speedy trial rights and cross-appeals from the trial court's denial of her motion to dismiss the indictment. We have jurisdiction for the appeal and cross-appeal under A.R.S. §§ 13–4032 and 13–4035. We affirm. The two issues in this appeal are:

1. Whether the trial court abused its discretion in granting a new trial due to prosecutorial nondisclosure of state aid given two key witnesses.

2. Whether the trial court acted capriciously in granting continuances, allegedly in violation of appellee's right to a speedy trial.

The facts follow. On the evening of December 31, 1980, Patrick Redmond, his wife Marilyn, and his mother-in-law, Helen Phelps, were at the Redmond home preparing for a New Year's Party. Suddenly, three armed men, William Bracy, Murray Hooper and Edward McCall, forced their way into the house at gunpoint. The armed men herded the house's occupants into the master bedroom, where they were robbed of their jewelry and money, and bound and gagged. After forcing the three victims to lie face down on the bed, one of the armed men shot each victim in the head. Patrick Redmond's throat was also slashed. Patrick Redmond and Helen Phelps died from their wounds, but Marilyn Redmond lived to testify against her attackers.

Joyce Lukezic was convicted for her participation in the criminal conspiracy that led to the execution-style shootings of these three victims in the Redmond home. The aim of the conspiracy was to obtain control over Graphic Dimensions, a successful printing business co-owned by Patrick Redmond and appellee's husband, Ron Lukezic.

In the summer of 1980, Graphic Dimensions was presented with a proposal to bid on some potentially lucrative printing contracts with five Las Vegas hotels. This proposal was presented by appellee's brother, Arthur Ross, and Robert Cruz—both of whom allegedly had ties with organized crime. Patrick Redmond vetoed the printing contract proposal, allegedly because it involved giving illegal kickbacks to the hotels. The state's theory was that appellee, Ross and Cruz backed this proposal and wanted to eliminate Redmond, and eventually Ron Lukezic as well, in order to seize control of the printing business. Pursuant to this conspiracy, Robert Cruz hired three killers to arrange for Patrick Redmond's murder under circumstances that concealed the larger conspiracy by making the murder appear incidental to a robbery of the Redmond home.

The defense denied the existence of a conspiracy to kill Patrick Redmond. They argued that the shootings at the Redmond home were simply the natural consequence of a robbery by Bracy, Hooper and McCall. The defense contended, alternatively, that even if there was a conspiracy to murder Redmond, appellee was not involved in it. Accordingly, appellee minimized her association with Robert Cruz. She characterized him as simply a casual business acquaintance she met while visiting her brother's realty business, Sunview Development, where Cruz worked as a realtor during the last few months of 1980.

The key state witnesses linking appellee to the criminal conspiracy were: Sandy Perez, Arnold Merrill, Walter Roberts, and George Campanogni.

In early 1979, while Sandy Perez and Joyce Lukezic were working together, appellee told Perez that Patrick Redmond refused her husband's offer to sell his share of Graphic Dimensions. Appellee angrily declared that she had the connections to have Redmond killed. She also revealed that her husband had taken out an insurance policy which, upon the death of one of the partners to the printing business, provided funds for the surviving partner to buy out the deceased partner's interest.

Arnold Merrill was a former employee of Arthur Ross and a criminal associate of Robert Cruz. Late one night in September of 1980, Merrill was summoned to Cruz's home. Cruz showed Merrill a photo of Patrick Redmond, and offered him $10,000 if he would "hit" Redmond. Merrill refused. Merrill also refused an offer of $5,000 if he would drive the getaway car for Redmond's killers. When asked where he had gotten Redmond's photograph, Cruz responded, "From Joyce."

Walter Roberts was a graphics designer at Graphic Dimensions and a longtime acquaintance of Joyce Lukezic. According to Roberts' testimony, one evening in late October he went to appellee's house to discuss business. When he asked appellee why the Las Vegas deal had been called off, she angrily exclaimed, "The Las Vegas deal is not off. Artie and I spent too much time setting it up. Pat has held Ron back long enough, he has held the business back long enough. I'm going to have the son of a bitch wasted." Later, Roberts could no longer swear to this testimony because his drug and alcohol usage during this time made him, by his own admission, an unreliable witness.

In early December, Arnold Merrill drove Cruz to Sky Harbor airport to meet Bracy and Hooper. He observed Cruz hand Bracy a thick stack of hundred dollar bills. After staying in a motel for several days, Bracy and Hooper moved into Merrill's house, where they were introduced to Ed McCall. A few days later, Merrill received a call from Cruz, ordering him to take Hooper and Bracy to Chester's, a country and western bar, to find out if Patrick Redmond was there. When asked why they should look for him at this particular bar, Cruz responded, "Because Joyce says [Patrick] Redmond hangs out a lot there."

That same night, Bracy, Hooper and Merrill followed Redmond's car as he left the bar. When they neared Redmond's car, Hooper pointed a pistol out of the car's window and sighted Redmond. The at-

tempt failed when Merrill intentionally swerved the car off the road to avoid becoming a party to the murder, allowing Redmond to drive away. In a rage, Hooper shouted obscenities at Merrill, and threatened to kill him. Bracy and Hooper left town shortly thereafter. After the failed attempt, Merrill feared retaliation from Cruz and his associates.

Two days after the attempt on Redmond's life, Merrill was standing in the reception area outside Arthur Ross's office in Sunview Development. Joyce Lukezic, her face livid with anger, walked by Merrill into Ross's office without acknowledging his greeting. Fearing the conversation was about him, Merrill tiptoed into an adjacent room to overhear the conversation. He overheard the following exchange between Robert Cruz and appellee:

Lukezic: "Why hasn't Redmond been taken care of yet?"

Cruz: "Redmond will be dead by Christmas."

Louis Campanogni was Arnold Merrill's friend. Campanogni was also an accomplice, along with Merrill and McCall, in a series of thefts, burglaries and robberies that predated these events. On December 28, 1980, Campanogni picked up Bracy and Hooper from the airport and drove them to Merrill's house to stay for several days. Both Merrill and Campanogni were present in the early morning hours of January 1, 1980, when Bracy, Hooper and McCall returned to Merrill's home with the jewelry taken from the Redmond home and the weapons used in the crime.

The key state witness, linking Joyce Lukezic to the murder conspiracy, was Arnold Merrill. The defense directly attacked Merrill's testimony. They argued that Merrill masterminded the robbery at the Redmond home and invented this story to cover up his own involvement in these crimes. In support of this theory, the defense attempted to show that Merrill planned the earlier string of thefts, burglaries and robberies involving McCall and Campanogni. Another defense tactic was to suggest that Merrill concocted his story of appellee's participation in the conspiracy in order to have something to barter in plea bargain discussions with the state. The state rebutted this defense charge of the fabrication of Merrill's conspiracy account with the testimony of George Campanogni. Campanogni testified that, a few days after the murders at the Redmond home, Merrill revealed to him the existence of a secret organized crime conspiracy to kill Patrick Redmond which involved Cruz and Joyce Lukezic.

## I. THERE WAS NO ABUSE OF DISCRETION IN ORDERING A NEW TRIAL

In reviewing a decision to grant a new trial, we will not reverse the trial court unless there is a clear abuse of discretion. *State v. Fisher*, 141 Ariz. 227, 251, 686 P.2d 750, 774 (1984); *Taylor v. Southern Pacific*, 130 Ariz. 516, 637 P.2d 726 (1981). One reason for allowing the trial judge such broad discretion is that:

The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record.

*Reeves v. Markle*, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978). Another reason for our narrow standard of review is that a motion for new trial is not favorably looked upon by the trial judge, and will generally only be granted with great caution. *State v. Guthrie*, 108 Ariz. 280, 496 P.2d 580 (1972). We find no abuse of discretion in this case.

On August 6, 1982, two days after the jury's verdict, appellee filed a motion for new trial based on the existence of newly discovered evidence. 17 A.R.S., Rules of Criminal Procedure, rules 24.1, 32.1(e).[1] This newly discovered evidence concerned certain benefits given by the state to two witnesses, Arnold Merrill and George Cam-

---

1. 17 A.R.S., Rules of Criminal Procedure, will hereinafter be referred to as "rule" followed by the number.

panogni, that had not been previously disclosed by the prosecution. The defense alleged a violation of the requirements of rule 15.1(a)(7), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), from which this rule is derived. *Brady* requires the prosecution to reveal information that would tend either to absolve the defendant of guilt or mitigate his punishment. This disclosure requirement exists irrespective of the good or bad faith of the prosecution. 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

The trial court ordered a new trial due to the prosecution's failure to disclose three forms of state assistance, specifically:

1. The state's pretrial assistance to state's witness, Arnold Merrill, and his family, in facilitating the Merrill's car payments to GMAC so as to avoid repossession of the vehicle;

2. The state's assistance to Arnold Merrill in arranging for him to receive regular prescription drugs outside of ordinary jail custom;

3. The state's assistance to Arnold Merrill and George Campanogni in the preparation of presentence reports which were in substantial part altered, thereby assuring Merrill and Campanogni of certain sentences.

■ The first form of undisclosed state aid involves the creation of a payment procedure that concealed the location of Merrill's wife, Kathy, from GMAC. By this payment arrangement, Kathy Merrill's personal checks were sent to a county investigator, who converted her checks into a money order. He then sent the money order to GMAC in his own name. The trial court found that the reason for this scheme was to hide the location of Kathy Merrill's car to avoid its repossession. The court also concluded that this county investigator made at least one of Mrs. Merrill's car payments when her check was returned from the bank due to insufficient funds. Appellant contends that there is no evidence to support either of the court's findings. Specifically, appellant asserts that the record demonstrates that the state never made any of Kathy Merrill's car payments and that the payment procedure was only designed to hide the new identity she received under the witness protection program. In support of this contention, appellant cites the combined testimony of most of the persons involved in this transaction: Arnold and Kathy Merrill; Arnold Merrill's attorney; and the county investigator. We conclude, however, that the trial court did not err in disbelieving this testimony. The state does not deny that this county investigator sent money orders to GMAC on Kathy Merrill's behalf. Most, if not all, of these witnesses had an arguable interest in supporting the state's version of the facts. There were pending contempt proceedings against this county investigator for misconduct that included these actions. Additionally, this county investigator admitted making an unsecured loan to another important prosecution witness, Walter Roberts. Viewing the evidence in a light most favorable to the prevailing party, we find no error. *State v. Owen,* 101 Ariz. 156, 160, 416 P.2d 589, 593 (1966).

■ The prosecution also failed to disclose a second form of state aid. It was not revealed that from April to October of 1981, while Arnold Merrill was in custody, he received substantial daily doses of two addictive prescription drugs: valium and seconal. Although Merrill was incarcerated elsewhere at a secret place of confinement, the record establishes that Merrill could not receive these drugs under similar circumstances in the Maricopa County jail, where he would normally serve his time. We need not, however, rely on the mere unavailability of these drugs at the Maricopa County jail to prove that Merrill received special treatment. Although the state alleges that there was a medical need for supplying these drugs to Merrill, the record is devoid of any obvious medical reason, other than Merrill's admitted psychological dependence on valium, as to why he should receive substantial daily doses of these drugs.

Appellee also contends that the prosecution intentionally failed to reveal Arnold

Merrill's perjury regarding his drug dependence. At the preliminary hearing, Merrill admitted taking a significant daily dosage of valium for twenty years. At trial, Merrill denied he was ever addicted to valium. He also qualified his earlier testimony by contending that there was a nine-year period in the last twenty years wherein he took no drugs at all. In Merrill's presentence report, which the defense uncovered after trial, Merrill declared that he had been a valium addict for the last ten years of his life. Because the court in its new trial order refused to address the question as to whether the prosecution knowingly used perjured testimony, and because it would not change the outcome of this case, we shall not address this issue. The least that can be concluded from the record is that Merrill's unwillingness to clearly admit his addiction at trial enhanced the prejudicial effect of the state's failure to disclose the drugs given to him during confinement.

■ The other category of undisclosed state aid involves the falsification of Merrill's and Campanogni's presentence reports.[2] Appellant urges that alteration of the presentence reports was only designed to protect the new identities these witnesses received under the witness protection program. The trial court found that these reports were fabricated in order to assure that these two witnesses would receive the sentences recommended in their plea agreements.

A discussion of this issue requires additional facts. Merrill and Campanogni admitted their participation in the Redmond murder conspiracy and in an earlier series of thefts, burglaries and robberies. In exchange for their testimony, they received immunity from any future prosecution for these crimes. As part of their plea agreement, Merrill and Campanogni both pleaded guilty to one count of second degree burglary and one count of theft. A sentence of ten years probation was recommended for Campanogni and eight years in prison was recommended for Merrill.

Campanogni and Merrill were both brought to their presentence interviews by a county investigator who worked in almost daily contact with the prosecutors in this case. This county investigator was present during Campanogni's interview and even provided some of the answers that went into his report.

Both Merrill's and Campanogni's presentence reports were significantly altered. Campanogni's presentence report falsely states that he had no previous arrests, no history of drug and alcohol abuse, and no history of mental illness. The truth is that Campanogni had a previous arrest for assault and had a history of drug and alcohol abuse. Campanogni also had been involuntarily committed for a brief period in a mental institution, where he was diagnosed as a manic depressive. The most misleading statement found in both reports is the characterization of their subjects as first offenders without prior arrests or convictions. Nowhere in either Merrill's or Campanogni's presentence report does it disclose the existence or nature of their admitted involvement in the Redmond murder conspiracy or the earlier series of thefts, burglaries and robberies. This information was not disclosed to the probation officers. Even with respect to the burglary to which Merrill pleaded guilty, the report falsely

2. As we mentioned in *Mitchell v. Superior Court,* 142 Ariz. 332, 333, n.1, 690 P.2d 51, 52 n.1 (1984), in a similar context regarding the function of these reports:

[A] presentence report is required in cases where the court has discretion over the penalty and incarceration for one year or more is a possible disposition. Rule 26.4(a), Arizona Rules of Criminal Procedure, 17 A.R.S. There is a statutory directive to the probation officers to investigate cases referred to them by the court. A.R.S. § 12–253(4). Information

contained in the report comes from various sources, such as Department of Public Safety Records, Arizona Criminal Intelligence Agency records, and records or statements made by any interested party. Also included in the ... presentence reports are topic headings such as social history, health and personal habits, educational history, employment, victim's statements, previous record, marital status, any collateral information deemed appropriate by the presentence investigator, and the investigator's evaluation.

minimizes his participation simply to knowing in advance that a burglary would occur.

Appellant denies that either witness benefited from the falsification of their presentence reports. They allege that the sentencing judges agreed prior to the preparation of these reports to impose the stipulated sentences and knew these reports contained inaccurate information. They argue that the prosecution and defense knew of this arrangement as well, so that preparation of the presentence reports was no more than a mere formality.

We disagree. There is some evidence that it was widely known that Merrill and Campanogni were sentenced under fictitious names and with false addresses. The record also suggests, however, that the sentencing judges relied on the criminal, psychological and substance abuse histories in the presentence reports in sentencing Merrill and Campanogni. Both judges insisted on the preparation of presentence reports and apparently read them before imposing sentence. At least one of the judges indicated on the record that he was not bound by the plea agreement and could impose a different sentence from that recommended after submission of the presentence report. The probation officer who prepared Campanogni's report informed Campanogni and the county investigator that he wanted truthful information about the subject's history of substance abuse and about certain other areas of background information. This same probation officer testified that if he had known about Campanogni's involuntary stay in a mental institution, he would have included it in the report. The record is barren of any credible evidence that the correct information concerning Campanogni's and Merrill's criminal and psychological backgrounds was ever communicated to the judges in question.[3] We frankly find it difficult to believe that these judges were willing to abide by the stipulated sentences irrespective of the prior criminal, psychological and substance abuse histories of the defendants. We conclude that the trial judge did not err in finding these witnesses received a benefit by the alteration of their presentence reports.

■ We disagree with appellant's contention that a presentence report sealed to protect the new identity of an accused witness provided by the witness protection program is not subject to discovery under *Brady.* We approve of the procedure espoused in *Mitchell v. Superior Court, supra,* 142 Ariz. at 334, 690 P.2d at 53, as striking a proper balance between the state's concern for protecting witnesses from retaliation and the vital defense need for impeachment information about key prosecution witnesses. Where a legitimate concern for the protection of an accused is credibly invoked, the trial court can read the presentence report *in camera* and disclose the exculpatory portions to the defense. *See id.,* and the cases cited therein; rule 26.6(c) (before disclosure of a report, a court may excise information to protect confidential sources of information); *United States v. Figurski,* 545 F.2d 389 (4th Cir.1976). We do not require exhaustive disclosure of the specific measures taken to protect a witness, but only a report of the material benefits received from the state. We fail to see how, in the present case, disclosure of these three forms of state aid in this manner would have compromised any legitimate state interests.

■ Appellant also contends that there was no duty to disclose Merrill's presentence report because there is no evidence that the contents of this document were known to the prosecution. The record establishes that there was no representative of the prosecution present during Merrill's presentence interview and the presentence

---

**3.** The case was orally argued by the two prosecutors who represented the state below. One of these two prosecutors stated that the record did not establish whether the sentencing judges were apprised of these witnesses' admitted involvement in this conspiracy leading to a double homicide. He stated that the other prosecutor could not recall whether this information was relayed to the judges in question. Although the state now contends otherwise, we do not feel compelled to believe their assertion.

report was sealed shortly after its preparation. Both prosecutors state that they did not read the report. Courts have sometimes, however, ordered new trials due to the prosecution's failure to disclose *Brady* information even when the prosecution is unaware of this information. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427; and *United States v. Exposito,* 523 F.2d 242, 248 (7th Cir.1975), and the cases cited therein. *See also* rule 15.-1(d) and accompanying comment (duty of disclosure extends to information known by "other persons" including investigators). Although there may be circumstances where it would be unfair to require disclosure of *Brady* information unknown to the prosecution, we are persuaded that it is not unfair in this case. We shall assume, for the sake of argument, that the prosecution did not directly participate in the falsification of Merrill's presentence report. It remains true that the prosecution requested alteration of the report and arranged the circumstances under which it was falsified, including allowing Merrill to dictate without supervision some of the false information in his own report. Additionally, the prosecution has a duty to inquire into the material benefits state witnesses have received from the state. We emphasize that:

A prosecutor's office cannot get around *Brady* by keeping itself in ignorance or compartmentalizing information about different aspects of a case.

*Carey v. Duckworth,* 738 F.2d 875 (7th Cir.1984). Quite apart from *Brady,* the prosecutor of record in the sentencing of these witnesses had a duty to see the trial court was not misled by the falsified presentence reports. We believe that the state cannot plead ignorance of the conferral of this benefit.

■ We conclude that state witnesses received three forms of assistance that were subject to disclosure under *Brady.* We turn now to the question whether nondisclosure of this information warranted a new trial. In its latest decision on this point, *United States v. Agurs,* 427 U.S. 97,

96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court distinguished three different situations involving "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 94. *Agurs* divides nondisclosure cases into three basic categories:

1.  The prosecution's knowing use of perjured testimony;
2.  The prosecution's nondisclosure after a specific request for evidence is made by the defendant;
3.  The prosecution's nondisclosure after no specific defense request for the evidence and no prosecution use of perjured testimony.

The present case falls under the second category because we believe there was a specific defense request for the undisclosed information. The defense certainly identified the key issue in the case as the credibility of Arnold Merrill. As to Merrill's use of drugs, the defense challenged his reliability as a witness due to his extensive drug usage during a pretrial competency hearing and on cross-examination at trial. The defense also filed a very detailed discovery request demanding discovery of any benefits received by state witnesses in exchange for their testimony.

Each of *Agur's* three categories requires a different threshold for the materiality of the undisclosed evidence before failure to disclose violates the Due Process Clause and warrants retrial. The undisclosed evidence in this case satisfies the standard of materiality for the second category of nondisclosure case, namely, that "the suppressed evidence might have affected the outcome of the trial." 427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350.

In *Giglio v. United States, supra,* the Supreme Court held that failure to disclose a grant of immunity to a witness whose testimony is very likely determinative of guilt or innocence violates *Brady* and requires a new trial. In the case at bar, the trial court reasoned that Campanogni, and especially Merrill, provided such key testi-

mony. There were no eyewitnesses linking appellee to the crimes charged. The testimony of Merrill and Campanogni linking appellee to the conspiracy was largely hearsay, admissible as the statement of a co-conspirator or as a prior consistent statement. 17A A.R.S., Arizona Rules of Evidence, rule 801. We agree with the trial court that the credibility of the hearsay declarants under these circumstances is a vital issue. The trial court also correctly concluded that these two witnesses, because of their prior substance abuse and criminal histories, raise "more than the usual" credibility issue.

We disagree with the state's contention that *Giglio* is distinguishable merely because the present case did not involve the complete failure to disclose the grant of immunity to a state witness. Supplying an admitted drug addict with drugs provides an equally compelling incentive for that witness to lie. In our prior cases, we have granted a new trial when the prosecution fails to disclose information vitally affecting the credibility of a key state witness. *State v. Morales*, 129 Ariz. 283, 630 P.2d 1015 (1981); *State v. Holsinger*, 115 Ariz. 271, 564 P.2d 1238 (1977); *State v. McAvaney*, 106 Ariz. 149, 472 P.2d 18 (1970); *United States v. Librach*, 520 F.2d 550 (8th Cir.1975). For cases in other jurisdictions see *People v. Cwikla*, 46 N.Y.2d 434, 414 N.Y.S.2d 102, 386 N.E.2d 1070 (1979); *State v. Bailey*, 367 So.2d 368 (La.1979).

The trial court also found that all of these undisclosed forms of state aid were not presented to the jury. Appellant argues, citing *State v. Maddasion*, 130 Ariz. 306, 636 P.2d 84 (1981), that the falsification of these presentence reports was merely cumulative impeachment evidence, in view of the disclosure to the jury of the plea agreement and the sentences received by both witnesses. In light of the unusual and improper nature of this aid, we believe that this information was not simply cumulative impeachment evidence. The two probation officers who prepared Campanogni's and Merrill's presentence reports both have ten years experience in this line of work. Neither could recall another instance where

they were ordered by their superiors to completely falsify a presentence report. Additionally, falsification of a criminal defendant's presentence report constitutes a substantial benefit that warrants disclosure. When a defendant enters a plea, often the sentencing judge has little, if any, information concerning the defendant other than the presentence report required by rule 26.4. In many cases, the sentence imposed will be dictated primarily by the information contained in the presentence report.

We have considered appellant's other contentions and find them to be without merit. The judge did not act capriciously in ordering a new trial.

In affirming this order for a new trial, we feel compelled to express our disapproval of the conduct of the prosecution in this case. Whether these witnesses received benefits due to prosecutorial design or inexcusable neglect is immaterial, because the prosecution is to blame in either case. We certainly do not subscribe to the cavalier philosophy that the state can do no evil when acting in the name of the good.

## II. APPELLEE WAS NOT DENIED HER SPEEDY TRIAL RIGHTS

Appellee cross-appeals to dismiss the indictment due to an alleged denial of her speedy trial rights. 17 A.R.S., Arizona Rules of Criminal Procedure, rule 8; Ariz. Const. art. 2, § 24. Appellee was arrested on August 29, 1981. Her initial appearance was held on August 29, 1981, and her arraignment occurred on September 3, 1981. She was released on bond on September 16, 1981. Her trial commenced on June 10, 1982.

The asserted denial of appellee's speedy trial rights turns on whether the trial court erred in allowing any of three continuances. We will not disturb a ruling on a motion for continuance absent a clear abuse of the trial court's discretion. *State v. Sullivan*, 130 Ariz. 213, 635 P.2d 501 (1981). We find no abuse of discretion in this case.

■ First, on March 30, 1982, the trial court continued the case for 30 days on the state's motion, excluding 30 days in accord with rules 8.5 and 8.4(d). The trial court granted the continuance due to appellee's failure to provide discovery required by rule 15.2. Appellee attacks the grounds for awarding this continuance because the trial court did not make findings required by rule 8.5 that extraordinary circumstances existed and that delay was indispensable to the interests of justice. Nor was there an affidavit of good faith accompanying this motion, as required by rule 8.5(a). Also, appellee joined the state's motion for continuance. She now asserts that this constituted a second stipulated continuance in violation of rule 8.2(e). *Schultz v. Peterson,* 111 Ariz. 421, 531 P.2d 1128 (1975).

In addressing the alleged denial of the sixth-amendment right to a speedy trial, the court must typically consider: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant has demanded a speedy trial; and 4) the prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This detailed constitutional inquiry is not usually necessary in an ordinary rule 8 case, *State v. Tucker,* 133 Ariz. 304, 651 P.2d 359 (1982), though it is useful when significant provisions of rule 8 have been violated.

As to the delay, we concede that a 30-day period is not insignificant. In *Barker, supra,* the Supreme Court indicated that a longer delay is defensible in a complex conspiracy case like the present one. 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 107. The state had a valid reason for the delay, namely, appellee's failure to provide discovery. Appellee is the cause for the delay about which she complains on appeal. Also, the record reveals that appellee joined this motion. She did not object or demand a speedy trial until April 22, 1982. Nor has appellee suffered demonstrable prejudice by the delay. Appellee was released from incarceration only 20 days after her arrest and did not suffer prolonged confinement due to the delay. Preventing lengthy incarceration before trial is one of the primary purposes of the right to a speedy trial. *State v. Tucker, supra; United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). There was no apparent impairment of appellee's ability to defend herself, because there is no allegation of lost witnesses or evidence. Additionally, the trial court evidently found that she was not ready to proceed to trial anyway. We believe that it is not unfair to hold that appellee waived this error under the circumstances by failure to object, especially because this prevented the trial court from correcting the error. *State v. Lemon,* 110 Ariz. 568, 521 P.2d 1000 (1974); *State v. Adair,* 106 Ariz. 58, 470 P.2d 671 (1970); *State v. Lee,* 25 Ariz.App. 220, 542 P.2d 413 (1975); Annot., 57 A.L.R.2d 302, 336, 343 (1958). This error was remediable, because the trial court could have properly imposed this continuance as a discovery sanction pursuant to rule 15.7. We also believe that appellee's consent to the continuance, her role in causing the delay, and the lack of any additional pretrial incarceration distinguishes this case from the cases cited by appellee involving reversible rule 8.5 infractions. *See State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 529 P.2d 686 (1974); *Schultz v. Peterson, supra; State v. Heise, supra.* There was no abuse of discretion in permitting this continuance.

■ Second, the trial court granted another continuance on April 28, 1982, excluding 28 days from the computation of appellee's speedy trial period. The court found that the prosecution failed to comply with the disclosure requirements of rule 15.1 and that the defense had failed to comply with the disclosure requirements of rule 15.2. After cross-motions for discovery sanctions, the trial court imposed the continuance as a discovery penalty on the defense pursuant to rule 15.7. The choice of the appropriate sanction for the violation of discovery rules is within the trial court's sound discretion and will not be reversed absent an abuse of discretion. *State v. Alvarado,* 121 Ariz. 485, 591 P.2d 973 (1979).

We disagree that the trial court acted capriciously in penalizing appellee. *State v. Lawrence*, 112 Ariz. 20, 536 P.2d 1038 (1975), cited by appellee, does not stand for the proposition that the defense duty of disclosure under rule 15.2 does not arise at all until there is full compliance by the state with the disclosure required by rule 15.1. In *Lawrence*, we found the court's refusal of further discovery from the state to be a proper discovery sanction for defendant's failure to comply with rule 15.2. In the present case, the trial judge apparently believed that the defendant's noncompliance with rule 15.2 was more serious and longstanding than the state's discovery omissions. And although the evidence is conflicting, there is some evidence the trial court did not believe that the state's noncompliance with rule 15.1 was serious. Although appellee denies that she failed to provide discovery to the state, we note that both the original trial judge and the one subsequently assigned to the case found otherwise. Appellee did not introduce evidence of her discovery compliance at the hearing and there is little evidence in the record that bears directly on this issue. Under the circumstances, we are reluctant to substitute our judgment for that of two superior court judges. The issuance of this second continuance was not improper.

■ Third, the trial court continued the case for 15 days on its own motion on May 21, 1982, excluding this time. The reason for this third continuance was that the trial judge required hospitalization. The newly appointed trial judge could not hear the case until approximately two weeks later, on June 10, 1982. Starting trial the next week was not feasible. The entire division staff was on vacation, and this vacation could not be rescheduled on such short notice. Nor could the new judge hear the case the following week due to congestion of the court calendar and because his attendance was required at a judicial conference. Appellee asserts that the court's reasons for this continuance do not measure up to the "extraordinary circumstances" required by rule 8.5. On the contrary, illness or incapacity of a trial judge has justified exclusion of a reasonable time from the speedy trial period where the accused asserts no demonstrable prejudice. *United States v. Latimer*, 548 F.2d 311 (10th Cir.1977); *State v. Jennings*, 195 N.W.2d 351 (Iowa 1972); *Oberle v. Fogliani*, 82 Nev. 428, 420 P.2d 251 (1966); *Kopacka v. State*, 22 Wis.2d 457, 126 N.W.2d 78 (1964); *People v. Hamilton*, 61 App. Div.2d 1112, 403 N.Y.S.2d 372 (N.Y.App. 1978); *Cf. Barker v. Wingo, supra*, 407 U.S. at 514, 92 S.Ct. at 2182, 33 L.Ed.2d at 101 (illness of material witness would justify reasonable delay in speedily bringing defendant to trial); *State v. Heise*, 117 Ariz. 524, 573 P.2d 924 (App.1977) (unavailability of material witness would constitute extraordinary circumstances). Given the existence of exceptional circumstances in the form of this trial judge's illness, we are reluctant to impose any additional burdens on a division struggling to keep up with the workload created by the untimely departure of this trial judge. We believe that the court acted with reasonable speed under the circumstances in bringing the accused to trial. Nonetheless, if serious prejudice caused by the delay had been disclosed to the judge, we might well reach a different result. The trial judge should have some discretion in deciding what are extraordinary circumstances on the particular facts of each case. *State v. Heise, supra; State v. Torres*, 27 Ariz.App. 556, 556 P.2d 1159 (1976). *State v. Heise, supra*, cited by appellee, is not contrary authority. In *Heise*, the court conceded that the unavailability of a vacationing key prosecution witness would constitute an extraordinary circumstance. The court concluded, however, that the delay was caused by a scheduling conflict which the prosecutor's office could have easily foreseen. 117 Ariz. at 526, 573 P.2d at 926. The judge's illness in this case, by contrast, was not foreseeable.

■ Appellee also objects for the first time on appeal that there is no evidence that the chief presiding criminal judge in this division, when notified by the trial court of congestion, complied with rule 8.4

by promptly notifying the chief justice of the Arizona Supreme Court of the problem. This case is distinguishable from *State ex rel. Berger v. Superior Court, supra,* because here no violation of this rule is apparent from the record and no objection was raised below. In the absence of a timely objection, we will not address this issue on appeal. *State v. Suarez,* 137 Ariz. 368, 670 P.2d 1192, 1203 (App.1983). The trial court did not err in granting this last continuance.

We are aware that protection of the accused's right to a speedy trial sometimes requires the drastic remedy of dismissal of serious charges. *State v. Tucker, supra.* The delays attributable to the first two continuances, however, were primarily due to circumstances that were of appellee's own creation. These circumstances included appellee's repeated failure to comply with the trial court's discovery orders and the failure to make timely objections. The last continuance was occasioned by the unforeseen illness of a trial judge and the scheduling problems this created. There was no abuse of discretion.

Order granting motion for new trial affirmed.

HOLOHAN, C.J., and GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.