NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BRANDON STEPHEN LOPEZ, *Appellant.*

No. 1 CA-CR 15-0199
FILED 5-17-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-125141-002
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

Brandon Stephen Lopez, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill joined.

---

**C A T T A N I**, Judge:

¶1          Brandon Lopez appeals his convictions of one count of first-degree felony murder and two counts of first-degree burglary. His counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), asserting that he had searched the record on appeal and had not found any arguable question of law that was not frivolous. After reviewing the record and considering issues raised by Lopez in a supplemental brief, we affirm his convictions and the resulting sentences.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          One evening in May 2012, Jose Juan Hernandez, accompanied by Lopez, kicked in the door of C.R.'s Tempe apartment. A fight ensued, with Hernandez ultimately pistol whipping C.R. in the head and shooting him in the back of the head. Hernandez and Lopez left in a Pontiac automobile, but abandoned it after crashing it on a lawn.

¶3          Hernandez and Lopez then went inside a nearby home, and Hernandez stole car keys from the homeowner at gunpoint. Hernandez and Lopez saw a police car approaching, and they fled on foot. Lopez hid in a nearby backyard, while Hernandez broke into several more homes. Lopez evaded officers that evening, but he was eventually arrested and charged with one count of first-degree felony murder, two counts of burglary, and one count of armed robbery.

¶4          At a joint trial with Hernandez, witnesses testified that blood found in C.R.'s apartment and in the passenger seat of the Pontiac was consistent with having come from Lopez, who had been stabbed during the altercation with C.R. Lopez's fingerprints were also identified on the magazine in Hernandez's gun. The homeowner Hernandez stole the car keys from during the second burglary testified that the burglary was committed by two men.

¶5          Hernandez testified, stating that on the evening in question, he and Lopez were on their way to introduce Lopez to Hernandez's girlfriend's daughter.  Hernandez indicated that he first stopped at C.R.'s apartment to repay some money C.R. had loaned him.  Hernandez further testified that Lopez was unaware of the reason for their stop, that he told Lopez to wait in the car, and that when Lopez walked toward the apartment, C.R. started attacking him.

¶6          For unrelated reasons, Lopez was wearing a GPS monitoring anklet the night of the crimes.  A witness from the monitoring company testified that the device indicated that around 6:00 p.m., Lopez left his home in south central Phoenix, and that just before the monitoring device lost its signal at 10:00 p.m., Lopez was in Tempe.  From roughly 11:00 p.m. until 5:00 a.m., the anklet did not send a GPS signal, even though a motion sensor in the device indicated Lopez was moving.  Around 11:20 p.m., the anklet began to vibrate and flash a red light, indicating Lopez was outside the designated area.  Around 5:20 a.m., the anklet's back-up cell tower monitoring indicated that Lopez was in Tempe.  Finally, the GPS signal returned just before 7:00 a.m., indicating Lopez was back near his home in south central Phoenix.  The monitoring company witness opined that Lopez may have intentionally blocked the GPS signal.

¶7          The jury found Lopez guilty of one count of first-degree murder and two counts of burglary, but was unable to reach a verdict on the armed robbery charge.  The jury considered evidence of aggravating circumstances, and found that the State proved the following aggravating circumstances as to the burglary convictions: the offenses involved the infliction or threatened infliction of serious physical injury, the presence of an accomplice, and the use, threatened use, or possession of a dangerous instrument.  The jury additionally found that the second burglary was committed for pecuniary gain, and that it resulted in physical, emotional, or financial harm to the victim.

¶8          The court considered in mitigation Lopez's age, family support, and that he had a limited role in the incident, and determined that mitigating evidence outweighed the aggravating circumstances.  The court sentenced Lopez to life imprisonment with the possibility of release after 25 years for the first-degree murder conviction and to a concurrent, minimum sentence of seven years for the first burglary conviction.  The court imposed the minimum sentence of seven years for the second burglary conviction, to be served consecutively to the other sentences, with credit for 1,010 days of presentence incarceration.

## DISCUSSION

**¶9** Lopez argues that because he was acquitted of armed robbery, the jury must have concluded he was only at C.R.'s apartment intending to meet a girl, and thus he should not have been convicted of first-degree burglary. But burglary requires only that the defendant enter the structure with the intent to commit an offense, not that he complete the underlying offense. Thus, acquittal of the offense underlying a burglary charge thus does not necessitate acquittal on the separate and distinct burglary charge. *State v. Bottoni*, 131 Ariz. 574, 575 (App. 1982).

**¶10** The evidence presented at trial supports the burglary verdict. First-degree burglary is committed by entering a residential structure with the intent to commit any theft or felony therein, while knowingly possessing (or while an accomplice knowingly possesses) a deadly weapon in the course of committing the theft or felony. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-303(A)(3), -1507(A), -1508(A).[1] Here, Lopez's blood was found in the apartment, showing that he entered C.R.'s residence. Additionally, Lopez's fingerprints were found on the magazine of Hernandez's gun, witnesses saw two men kick open the door to C.R.'s apartment, and Lopez apparently intentionally blocked his GPS monitor, all of which support a finding that he left his residence and entered C.R.'s apartment intending to commit a crime.

**¶11** Lopez next asserts that the GPS device was not submitted into evidence or tested for errors. But Lopez does not claim that he was prevented from securing and presenting evidence, and the monitoring company witness was available for cross examination regarding the device. Moreover, to the extent Lopez is arguing that, without the GPS evidence, the remaining evidence was insufficient to convict, his argument fails; the evidence presented to the jurors, as detailed above, was sufficient to "allow reasonable persons to find a defendant guilty beyond a reasonable doubt." *See State v. Payne*, 233 Ariz. 484, 507, ¶ 76 (2013).

**¶12** Lopez also argues that blood and tissue found in the gun barrel were not subjected to DNA testing. The grip, muzzle, and slide were subjected to testing. Although additional tissue found in the gun barrel was not tested, results from such testing would not have undermined the verdict even if the tissue had been determined not to be from Lopez. Because Lopez was liable for Hernandez's acts under an accomplice

---

[1] Absent material revisions after the relevant date, we cite a statute's current version.

liability theory, *see* A.R.S. § 13-303, the absence of Lopez's DNA on the gun would not have been dispositive.

¶13 Lopez next contends that the State improperly disclosed evidence less than 30 days before trial. *See* Ariz. R. Crim. P. 15.1(c)(1), 15.6. Before trial, Lopez's counsel filed a motion for sanctions based on the State's August 2014 disclosure of forensics reports, police reports, interview tapes, and data from Lopez's GPS anklet, all of which were available in 2012. The court granted a two-month continuance (trial had been set for September 17, 2014), but otherwise declined to impose sanctions. We review the superior court's decision regarding sanctions for an abuse of discretion. *See State v. Lukezic*, 143 Ariz. 60, 69 (1984).

¶14 Under Rule 15.7(a), when a party fails to make required disclosures, "[t]he court shall order disclosure and shall impose any sanction it finds appropriate," taking into consideration "the significance of the information not timely disclosed, the impact of the sanction on the party and the victim and the stage of the proceedings at which the disclosure is ultimately made." The record indicates that the untimely disclosed reports were provided to counsel weeks before trial. And the two-month continuance provided Lopez's counsel time to review the forensic reports and conduct necessary interviews. The record does not indicate intentional withholding of evidence by the State, and Lopez does not allege that the continuance was insufficient to permit counsel to review the disclosed documents. Accordingly, the superior court did not abuse its discretion by declining to impose sanctions.

¶15 Finally, Lopez argues that jury members fell asleep or generally were not paying attention during trial. But this contention is not supported by the record, which does not contain any reference to distracted or sleeping jurors. Moreover, Hernandez's counsel commented in her closing argument that the jurors had been taking notes, asking questions, and paying close attention throughout the trial. Accordingly, Lopez's claim fails.

¶16 In addition to considering the arguments raised by Lopez,[2] we have reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300.

---

[2] Lopez additionally argues that his attorney failed to call a witness Lopez had requested. But assertions of ineffective assistance of counsel will not be considered on direct appeal; such assertions should be raised instead in a post-conviction proceeding under Rule 32 of the Arizona Rules of Criminal Procedure. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

We find none. Lopez was present and represented by counsel at all stages of the proceedings. The record reflects that the superior court afforded Lopez all his constitutional and statutory rights, and that the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial was sufficient to support the jury's verdicts. Lopez's sentences fall within the range prescribed by law, with proper credit given for presentence incarceration.

## CONCLUSION

¶17        Based on the foregoing, we affirm Lopez's convictions and sentences. After the filing of this decision, defense counsel's obligations will end after informing Lopez of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Lopez shall have 30 days from the date of this decision to proceed, if he desires, with a *pro se* motion for reconsideration or petition for review.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : ama